MARY LOU SAKONYI *et al.*, Petitioners-Appellants and Cross-Appellees, v. STEVE LINDSEY *et al.*, Respondents-Appellees (The Electoral Board of Community Unit School District 168, Franklin and Williamson Counties, Respondent-Appellee and Cross-Appellant).

Fifth District   No. 5—93—0449

Opinion filed May 18, 1994.

James R. Moore, of Carterville, for appellants.

J. Lawrence Sanders, of Sanders & Sanders, of Marion, for appellee Electoral Board of Community Unit School District 168.

No brief filed for other appellees.

JUSTICE CHAPMAN delivered the opinion of the court:
Community Unit School District 168 of Franklin and William-

son Counties (the School District) announced that $825,000 in working cash bonds were going to be issued unless a petition containing a minimum of 926 signatures requesting that the matter be put on the ballot was filed. Petitions containing over 1,400 signatures were filed. Six individuals filed objections to many of the signatures. The Electoral Board (the Board) convened and ruled there were not enough signatures to put the matter on the ballot. Petitioners appealed the decision of the Board to the trial court, which found there were 889 valid signatures, 37 short of the required 926. We reverse that part of the circuit court's judgment. The petitioners, Mary Lou Sakonyi, Corliss Fletcher, and Ernie Brown, represent the people who want to have the bond issue placed on the ballot. The first issue petitioners raise is whether the Board has standing to cross-appeal. Resolution of this question is not necessary, however, as the petitioners, who have standing without question, fully address the substantive issues at bar. Under the circumstances of this case, determination of whether the Board has standing to prosecute an appeal is not necessary to dispose of the case, nor would resolution of the standing issue affect its outcome. We turn, therefore, to the substantive issues.

■ Another preliminary matter concerns the timing of the hearing. Petitioners filed their petition for judicial review in the circuit court on March 26, 1993. The Board contends that the circuit court's failure to conclude the hearing on the petition within 30 days of the filing of the petition divested the court of jurisdiction. According to a docket entry, the trial judge held a telephone conference with the attorneys of record at which time the court scheduled a pretrial hearing on April 21, 1993, and a final hearing for April 26, 1993. At the April 21, 1993, hearing, with the consent of all parties present, including the attorney representing the Board, the court continued the matter to April 28, 1993, for a status hearing. Ultimately, the circuit court heard arguments on May 5, 1993, and rendered a decision on June 15, 1993.

Section 10—10.1 of the Election Code provides that "[t]he court shall set the matter for hearing to be held within 30 days after the filing of the petition and shall make its decision promptly after such hearing." (10 ILCS 5/10—10.1 (West 1992).) Nothing in section 10—10.1 provides that the hearing shall be concluded within 30 days—the statute states: "[A]nd [the court] shall make its decision promptly after such hearing." (10 ILCS 5/10—10.1 (West 1992).) A pretrial hearing was conducted within 30 days of the filing of the petition. The plain language of the statute indicates that the legislature

intended the judicial review to be an expedited proceeding. However, the statute does not provide that the 30-day requirement is jurisdictional or that the hearing must be concluded within 30 days of the filing of the petition. It is not evident from the record that the Board suffered any prejudice because of the delay, and we find no error.

The next issue for consideration is whether the Board erred in striking three of the Ruth Rose petitions which were submitted on behalf of registered voters who wanted the bond issue placed on the ballot. Each of the Ruth Rose petitions included the following affidavit signed by her:

> "The undersigned, being first duly sworn, deposes and certifies that he is a registered voter of Community Unit School District Number 168, Franklin and Williamson Counties, Illinois, that his residence address is _____, Illinois, that the signatures on the foregoing petition were signed in his presence and are genuine, that to the best of his knowledge and belief the persons so signing were at the time of signing said petition registered voters of said school district and that their respective residences and [sic] correctly stated therein."

Although Ruth Rose signed each of the four affidavits, which were numbered 50, 51, 52, and 53, none of the sheets contain her address in the affidavit of the circulator. Ruth Rose's address was, however, provided in petition number 51, which Rose also signed as a petitioner.

The Board rejected petitions numbered 50, 52, and 53:

> "The verification of sheets numbered 50, 52, and 53 were [sic] not completed, as required by 10 ILCS 10—10 [sic], [and] therefore forty-six (46) otherwise valid signatures are invalidated."

Appellants contend that the Board's decision was error. We agree.

Section 10—10 of the Election Code, which the Board referred to in its decision, gives the Board the authority to decide whether the petitions are in proper form and whether the objections thereto should be sustained. (10 ILCS 5/10—10 (West 1992).) In addition to the individual objections filed as to 7 of the 64 signatures in Rose's petitions, a general objection was filed alleging that Rose's address did not appear in the circulator's affidavit of the petitions and did not appear at all on three of the four petitions. Section 28—3 of the Election Code provides in part:

> "At the bottom of each sheet of such petition shall be added a statement, signed by a registered voter of the political subdivision *** in which the question of public policy is to be submitted, stating the street address *** of the voter ***, as well as the voter's city, village or town, certifying that the signatures on that sheet of the petition were signed in his presence and are genuine, and

that to the best of his knowledge and belief the persons so signing were at the time of signing the petition registered voters ***." (10 ILCS 5/28—3 (West 1992).)

The issue in this case is whether the failure to include the circulator's address in the affidavit or otherwise on the petition is sufficient to invalidate the petition.

*Schumann v. Kumarich* (1981), 102 Ill. App. 3d 454, 430 N.E.2d 99, addressed a similar issue. Objections were raised to nominating petitions of two candidates seeking election to the board of trustees of a community college district. The objectors claimed that the nominating petitions were defective because the circulator's affidavit on the bottom of each petition failed to include the circulator's address. The appellate court held that the requirements of section 10—4 of the Election Code (10 ILCS 5/10—4 (West 1992)), regarding the information required to be included in a circulator's affidavit, were mandatory and not directory. The court held, however, that substantial compliance with the statute was achieved in those instances where the circulator's address was given at the top of the petition, although the address was not provided in the circulator's affidavit.

Failure to comply with a mandatory provision in a statute vitiates the proceeding to which it relates, while compliance with a directory provision is not necessary to the validity of the proceeding. (*Shipley v. Stephenson County Electoral Board* (1985), 130 Ill. App. 3d 900, 902, 474 N.E.2d 905, 907.) The sufficiency of the petition requirements is determined with reference to the particular function it was designed to accomplish. (See *Lewis v. Dunne* (1976), 63 Ill. 2d 48, 53, 344 N.E.2d 443, 446.)

"If the provision merely directs a manner of conduct for the guidance of the officials or is designed to secure order, system and dispatch in proceedings, it is generally directory, absent negative language denying the performance if the acts required are not done in the manner designated. If, however, the conduct is prescribed in order to safeguard a person's rights, which may be injuriously affected by failure to act in the manner specified, the statute is mandatory." *Shipley*, 130 Ill. App. 3d at 903, 474 N.E.2d at 907.

■ We are aware of no Illinois case which discusses the purposes behind the address requirement of the Election Code, but we believe the purposes can be readily inferred. The address is part of the circulator's affidavit certifying the authenticity of the signatures (10 ILCS 5/28—3 (West 1992)). Thus, one purpose of the address is to protect the integrity of the electoral process by furnishing the

circulator's address which enables the Board to locate her, question her about the signatures, and hold her responsible for her oath.

It is assumed by her sworn statement that the circulator is subjecting herself to possible perjury prosecution. Thus, the circulator's affidavit requirement is considered a meaningful and realistic method of eliminating fraudulent signatures and protecting the integrity of the political process. (*Shipley*, 130 Ill. App. 3d at 906-07, 474 N.E.2d at 910.) Ruth Rose's signature did appear on petition 51, where she signed the top line of the petition. She testified that she is a registered voter at 305 N. Horn Street in West Frankfort, and that is the same address on petition 51. She testified that she circulated petitions 50 through 53. Thus, her address, although not on sheets 50, 52, and 53, was available on sheet 51.

We can discern no useful purpose for requiring the circulator's address to appear on each petition that she submits, other than for administrative convenience. By writing her address on petition 51, Rose fulfilled the purpose of protecting the integrity of the electoral process by providing the Board ready access to her for questioning her oath. Ruth Rose signed each of the circulator's affidavits. Only her address was omitted from the affidavits. Thus, notwithstanding the failure to include her address in the circulator's affidavit, Rose's signature subjected her to the possibility of penalties for perjury. The requirement that she enter her address on each petition only served the purpose of administrative convenience.

Under these circumstances, we conclude that the integrity of the electoral process was not in jeopardy, and that the address requirement of section 28—3 of the Election Code was substantially complied with. We further conclude that the Board's rejection of the three petitions, after hearing testimony assuring the integrity of Rose's oath, did not facilitate the efficiency of the electoral process.

For these reasons, we reverse that part of the decision of the circuit court which affirmed the Board's rejection of petitions 50, 52, and 53. We note that after the circuit court's judgment, the petitioners were 37 signatures short of the required 926 necessary to have the bond issue placed on the ballot. Excluding those signatures on each of Rose's petitions to which individual objections were made, we find that, given our decision reinstating petitions numbered 50, 52, and 53, there are now an additional 47 signatures, which when added to the circuit court's finding of 889 valid signatures yields 936 signatures, which exceeds the total number of signatures necessary to have the bond issue submitted to the voters. Thus, there are now 936 valid signatures, enough to put the bond issue on the ballot.

■ The next issue for our consideration is whether the circuit

court erred in ordering the petitioners to pay the Board $800 as costs for preparing the record. The Board had requested reimbursement of $1,125.77 in costs. The Board contends that the circuit court should have awarded the full $1,125.77, whereas the petitioners argue that they should not have to reimburse the Board for any costs. Cursory arguments are submitted in the briefs, with no citation of authority or to the record. Without more, we affirm the decision of the trial court ordering the petitioners to pay the Board $800 as costs.

We need not reach any other issues regarding the Board's decision, given our decision herein. For the reasons stated, the judgment of the circuit court is affirmed in part and reversed in part and this cause is remanded to the circuit court for the Franklin County clerk to submit the proposition at an election in accordance with the general election law.

Affirmed in part; reversed in part and remanded.

GOLDENHERSH and MAAG, JJ., concur.