1-02-0444 First Division

March 29, 2002 

MARY NOLAN, ) Appeal from the

) Circuit Court of

Petitioner-Appellant, ) Cook County

)

v. ) 

)

COOK COUNTY OFFICERS ELECTORAL )

BOARD, Constituting the Electoral Board ) No. 02 CE 004

Individually and as such Board, DAVID D. ORR, )

Cook County Clerk, DOROTHY BROWN, Clerk )

of the Circuit Court of Cook County, RICHARD )

A. DIVINE, State's Attorney of Cook County, and )

PATRICK G. DONNELLY, 
) The Honorable 

) Susan Fox Gillis,

Respondents-Appellees. ) Judge Presiding.

PRESIDING JUSTICE COHEN delivered the opinion of the court:

Mary Nolan filed a nominating petition in support of her candidacy for the office of Illinois senator for the 18th legislative district.  Patrick G. Donnelly filed an objection to Nolan's nominating petition.  Donnelly raised no question as to the authenticity of the signatures themselves; rather,  he argued that the circulator's affidavit on each of the petition's 70 signature sheets was flawed as a matter of law and that the signature sheets should be stricken.  The Cook County Officers Electoral Board (Board) agreed and struck the signature sheets.  Because Nolan was then unable to satisfy the minimum signature requirement, the Board declared her nominating petition invalid and removed her name from the ballot to be voted on at the primary election of March 19, 2002.  Nolan filed a petition for judicial review in the circuit court of Cook County.  After a hearing, the circuit court affirmed the decision of the Board.  

We allowed an expedited appeal pursuant to Supreme Court Rule 311 (155 Ill. 2d R. 311).  Because we find that Nolan has substantially complied with the requirements of the recent amendment to section 8-8 of the Election Code (Pub. Act 92-129, §5, eff. July 20, 2001 (amending 
10 ILCS 5/8-8 (West 2000))), we reverse both the decision of the Board and the judgment of the circuit court and order Nolan's name restored to the ballot.
(footnote: 1) 

BACKGROUND

Mary Nolan sought nomination as a candidate for Illinois senator for the 18th legislative district
 in the March 19, 2002, Democratic
 primary.  In support of her candidacy, Nolan filed a nominating petition containing 1,333 signatures on 70 separate pages.  On each of the signature pages, the following prefatory language is present:

"We, the undersigned members of and affiliated with the DEMOCRATIC PARTY and qualified primary voters of the DEMOCRATIC PARTY in the State of Illinois, do hereby petition that the following named person shall be a candidate of the DEMOCRATIC PARTY for nomination to the office hereinafter specified, to be voted for at the primary election to be held on the 19th day of March, 2002.

Name Address Office District Party 

MARY NOLAN 10338 SOUTH PARKSIDE STATE 18th SENATORIAL DEMOCRATIC

UNIT 23 SENATOR DISTRICT 

   OAK LAWN, IL 60453 STATE OF ILLINOIS
"

The following certification, commonly referred to as a "circulator's affidavit," is present at the bottom of each of the signature pages:

"I, ________, do hereby certify that I reside at _______________ in the (City, Town or Village) of ________, Zip Code _____, County of _____, and State of Illinois, that I am 18 years of age or older, that I am a citizen of the United States, and that the signatures on the sheet were signed in my presence and are genuine, and that none of the signatures on this sheet were signed more than 90 days preceding the last day for the filing of the petition, and that to the best of my knowledge and belief the persons so signing were at the time of signing the petition qualified voters of the DEMOCRATIC PARTY, residing in the State of Illinois, and that their respective residences are correctly stated as above set forth."  

Patrick Donnelly filed an objection to the form of Nolan's nominating petition, asking that the Cook County Officers Electoral Board rule the petition invalid in its entirety and strike Nolan's name from the primary ballot.  Donnelly argued that the language of the circulator's affidavit, as set forth above, failed to comply with the requirements of newly amended section 8-8 of the Election Code (Pub. Act 92-129, §5, eff. July 20, 2001 (amending 
10 ILCS 5/8-8 (West 2000))).  As amended, section 8-8 requires the individual who circulates a candidate's nominating petition to certify in an affidavit at the bottom of each signature sheet that: (1) "the signatures on that sheet of the petition were signed in his or her presence"; (2) "the signatures are genuine", and (3) "to the best of his or her knowledge and belief the persons so signing were at the time of signing the petition qualified primary voters 
for which the nomination is sought
."  (Emphasis added.)
  2001 Ill. Legis. Serv. 2267, 2272 (West)

Donnelly argued that the phrase "for which the nomination is sought" in section 8-8 refers to the legislative district for which a candidate seeks nomination, and claimed that because the affidavits on Nolan's signature sheets contained no reference to the 18th legislative district they were insufficient as a matter of law.  Nolan responded that the disputed phrase refers to political party affiliation and that because her affidavits specifically refer to the "DEMOCRATIC PARTY," they complied with section 8-8 as amended. 

Following a public hearing, the Board found Nolan's affidavits to be inadequate.  The Board adopted Donnelly's proposed construction of section 8-8 as amended and in their ruling stated: 

"[N]o district or subdivision is mentioned.  On what basis, then could the Circulators (or signers) have known that the signers should have been limited to those in the district?  Without such knowledge how could the circulators have certified - as they should have, but did not - that to the best of their knowledge and belief, the signers were qualified primary voters for the nomination being sought?"  

The Board sustained Donnelly's objection and invalidated all 70 of Nolan's signature sheets.  Because Nolan was then unable to satisfy the minimum requirement of 600 certified signatures (10 ILCS 5/8-8 (West 2000)), the Board struck her name from the primary ballot.

Nolan filed a petition for judicial review of the Board's decision.  After hearing argument, the circuit judge denied Nolan's petition and affirmed the decision of the Board, stating:

"The candidate's argument that the [disputed] provision relates to the [D]emocratic party is not persuasive.  The plain meaning of the words added by the legislature is, in this Court's opinion, referring to the district or subdistrict, in this case for state senate of the 18th Legislative District.  To accept the candidate's interpretation of the statute, the circulator could certify that the signers were Democratic voters, but certify only that they live in the State of Illinois, remaining silent on the issue for which the nomination is sought since the Democratic voter in Illinois is not necessarily able to vote for a candidate of the 18th Legislative District thus rendering the certification meaningless and the words of the statute to be meaningless."

We allowed expedited appeal pursuant to Supreme Court Rule 311 (155 Ill. 2d R. 311).  We now reverse the judgment of the circuit court and direct that Nolan be reinstated to the primary ballot.

ANALYSIS

"[B]allot access is a substantial right and not lightly to be denied."  
Reyes v. Bloomingdale Township Electoral Board
, 265 Ill. App. 3d 69, 71 (1994), citing 
Welch v. Johnson
, 147 Ill. 2d 40, 56 (1992).
  "We are mindful of the need to tread cautiously when construing statutory language which restricts the people's right to endorse and nominate the candidate of their choice."  
Lucas v. Lakin
, 175 Ill. 2d 166, 176 (1997).

We review 
de novo
 the Board's construction of section 8-8 of the Election Code (
Lucas
, 175 Ill. 2d at 171); however,
 we review the Board's findings of fact to determine whether they are supported by the manifest weight of the evidence.  
King v. Justice Party
, 284 Ill. App. 3d 886, 888 (1996).
  "When construing the meaning of a disputed statute, this court's primary objective is to ascertain and give effect to the intent of the legislature.  [Citation.]  Legislative intent is best determined by examining the statutory language, which must be given its plain and ordinary meaning."  
Lucas
, 175 Ill. 2d at 171.  

Nolan's argument that the phrase "for which the nomination is sought" refers to political party affiliation is neither logically
 nor grammatically
 persuasive.  We agree with the circuit court.  In its plain and ordinary meaning the disputed phrase unambiguously refers to the legislative district for which the candidate seeks nomination.  2001 Ill. Legis. Serv. 2267, 2272 (West)
.

As is evident from their briefs, the parties each assume -- erroneously
 -- that a decision by this court construing the disputed phrase in their favor will resolve the matter.  Upon further analysis and a careful examination of the record, however, we find that the key lies instead in the words immediately preceding the disputed phrase: "qualified primary voters." 

Although
 Nolan's circulator's affidavit is itself devoid of any reference to the 18th legislative district, this court may incorporate by reference into a circulator's affidavit
 language contained elsewhere in a nominating petition in order to satisfy a certification requirement under the Election Code.  See
 Schumann v. Kumarich
, 102 Ill. App. 3d 454, 458-59 (1981) (allowing circulator's address appearing elsewhere on nominating petition to satisfy certification requirement under provision relating to nomination of candidates of minor political parties (Ill. Rev. Stat. 1979, ch. 46, par. 10-4
 (now 10 ILCS 5/10-4 (West 2000))));  
Sakonyi v. Lindsey
, 261 Ill. App. 3d 821, 825-26 (1994) (same as to certification requirement under provision relating to submission of public questions (10 ILCS 5/28-3 (West 1992))).  In 
Sakonyi
 and 
Schumann
, the courts found that the candidates had substantially complied with the otherwise mandatory certification requirements. 
 Sakonyi
, 261 Ill. App. 3d at 826;
 
Schumann
, 102 Ill. App. 3d at 459
.  See also 
King v. Justice Party
, 284 Ill. App. 3d 886, 890-91 (1996) (discussing substantial compliance with consecutive page numbering provision in section 10-4 of the Election Code (10 ILCS 5/10-4 (West 1994)), a mandatory provision unrelated to certification).

The Board found that Nolan's signature sheets "[made] no reference to limiting the signers to those voters from the 18th Legislative District."  In arguing against a finding of substantial compliance, Donnelly steadfastly maintains that "[n]owhere in the petitions is any reference made to the 
signers
 being residents of the 18
th
 Legislative District."  (Emphasis in original.)  We disagree.  First, Nolan's circulator's affidavit certifies that all of the signers were "qualified voters."  Section 3-1.2 of the Election Code, as recently amended (Pub. Act 92-129, §5, eff. July 20, 2001 (amending 
10 ILCS 5/3-1.2 (West 2000))), defines "
qualified voter" as "a person who is registered to vote at the address shown opposite his signature on the petition."  2001 Ill. Legis. Serv. 2267, 2267 (West).
 

Second, the prefatory language present on each of the signature sheets states that the signers are all "qualified 
primary
 voters,"
 and limits the signers' request for Nolan's nomination to the
 
"
office hereinafter specified
."  (Emphasis added.)  The office clearly specified on the next line of each signature sheet is that of state senator for the "18th senatorial district."
(footnote: 2)   The Board's finding to the contrary is against the manifest weight of the evidence.  
King
,
 284 Ill. App. 3d at 888. 

One cannot be a "qualified primary voter" for the office of Illinois senator for the 18th legislative district 
unless
 one resides in that district.  10 ILCS 5/8-8 (West 2000) ("[a]ll petitions for nomination for the office of State Senator shall be signed by 1% or 600, whichever is greater, of the qualified primary electors of the candidate's party 
in his legislative district
 ") (emphasis added)).  

We conclude that by including: (1) the phrase "qualified voters" in her circulator's affidavit; (2) the phrase "qualified primary voters" in the prefatory language of her signature sheets; and (3) the limiting reference to the "18th senatorial district," Nolan substantially complied with the certification requirement of the amended section 8-8.  2001 Ill. Legis. Serv. 2267, 2272 (West)
.  The Board, as well as the circuit court
, erred in declaring Nolan's signature sheets invalid.  As Donnelly has not challenged the authenticity of th
e signatures themselves, we find the 1,333 signatures contained in Nolan's petition sufficient to satisfy the minimum signature requirement.  10 ILCS 5/8-8 (West 2000)
. 

Our decision finds support in the nature of the information that the legislature has determined should now be certified under section 8-8. 
 We find the commentary of our Fifth District colleagues with respect to the certification of the circulator's address under related provisions of the Election Code to be instructive:

"We are aware of no Illinois case which discusses the purposes behind the address requirement of the Election Code, but we believe the purposes can be readily inferred.  The address is part of the circulator's affidavit certifying the authenticity of the signatures (10 ILCS 5/28-3 (West 1992)).  Thus, one purpose of the address is to protect the integrity of the electoral process by furnishing the circulator's address which enables the Board to locate her, question her about the signatures, and hold her responsible for her oath.

It is assumed by her sworn statement that the circulator is subjecting herself to possible perjury prosecution.  Thus, the circulator's affidavit requirement is considered a meaningful and realistic method of eliminating fraudulent signatures and protecting the integrity of the political process."  
Sakonyi
, 261 Ill. App. 3d at 825-26.

The certification required under section 8-8 also relates to the authentication of voters' signatures.   It is part of the system of checks and balances the legislature has crafted into the Election Code to prevent fraud on the electorate.  It ensures that one candidate does not gain an unfair advantage over another by seeking nominating signatures from outside the relevant political subdivision, in this case the 18th legislative district.  We have already concluded, however, that Nolan's signature sheets contain sufficient information to prevent such an occurrence. 

Our holding is limited to the particular facts before us.  We make no sweeping statement that substantial compliance is sufficient to satisfy all certification requirements under the Election Code.  We hold only that (as in 
Sakonyi 
and 
Schumann
) where, as here, the prefatory language of a candidate's signature sheets sufficiently represents that all of the signers satisfy a particular certification requirement, it neither serves a useful purpose nor aids in preserving the integrity of the electoral process (
Sakonyi
, 261 Ill. App. 3d at 826) to exclude the candidate from participation for failure to demonstrate strict compliance with the relevant statutory provision.  

CONCLUSION

For the foregoing reasons, we reverse both the decision of the Cook County Officers Electoral Board and the judgment of the circuit court of Cook County and direct that Mary Nolan be immediately restored to the ballot to be voted on at the primary election of March 19, 2002.

Reversed, with directions.

McNULTY and TULLY, JJ., concur.

FOOTNOTES
1:  On March 12, 2002, we entered an order to this effect, mandate to issue 
instanter
, stating that an opinion would follow. Justice McNulty took no part in the consideration of that order.

2:  Although the correct reference would be to the 18th 
legislative
 district, we cannot say that this discrepancy would engender any confusion on the part of those signing the petition as to the nature of the office for which they were nominating Nolan.