# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Cunningham v. Schaeflein*, 2012 IL App (1st) 120529

---

| | |
|---|---|
| Appellate Court Caption | JOHN A. "JACK" CUNNINGHAM, Petitioner-Appellee, v. HENRY SCHAEFLEIN AND EDMUND BREZINSKI, Respondents-Appellants (The State Officers Electoral Board; The Illinois Board of Elections; and William M. McGuffage, Jesse R. Smart, Harold D. Byers, Betty Coffrin, Bryan H. Schneider, Charles W. Scholz, Ernest L. Gowen, Judith C. Rice, as Members of the State Officers Electoral Board and The Illinois State Board of Elections, Respondents). |
| District & No. | First District, Fifth Division<br>Docket No. 1-12-0529 |
| Filed | May 4, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from the trial court's reversal of the Electoral Board's decision sustaining an objection to petitioner's nominating papers for the office of Representative in the United States Congress, the part of the trial court's decision reversing the Board's invalidation of the petition sheets on which the circulator had transposed two digits in his address was affirmed on the ground the error was minor, it did not prevent the circulator from being located and it did not put the integrity of the political process in jeopardy, but the portion of the trial court's decision reversing the Board's finding that petitions of two circulators who failed to swear their circulator affidavits before a notary were invalid was reversed, since the circulators' conduct was evidence of a pattern of false swearing, fraud, and a total disregard of the Election Code's requirements that warranted striking the sheets circulated by the offenders in their entirety. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2012-COEL-11; the Hon. Susan Fox Gillis, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part. |
| Counsel on Appeal | John G. Fogarty, Jr., of Chicago, for appellants. |
| | James P. Nally, P.C., and Burton S. Odelson and Matthew M. Welch, both of Odelson & Sterk Ltd., both of Chicago, for appellee. |
| Panel | PRESIDING JUSTICE EPSTEIN delivered the judgment of the court, with opinion. |
| | Justices J. Gordon and McBride concurred in the judgment and opinion. |

**OPINION**

¶ 1     The instant appeal arises from an objection to the nominating papers of John A. "Jack" Cunningham, who seeks the Republican nomination to the office of Representative in the United States Congress for the 11th Congressional District. Henry Schaeflein and Edmund Brezinski filed an objection to Cunningham's nominating papers, arguing, *inter alia*, that circulator Charles Leslie listed an incorrect address on all the petition sheets he circulated and therefore all the signatures appearing on his sheets were invalid. The State Officers Electoral Board (Board) sustained the objection on this basis and invalidated all signatures on the petition sheets circulated by Charles Leslie, which resulted in Cunningham having fewer than the minimum number of valid signatures required for his name to appear on the primary ballot. Cunningham sought judicial review of the Board's decision in the circuit court of Cook County. The circuit court reversed and ordered Cunningham's name to appear on the primary election ballot.

¶ 2     The objectors raise three issues on appeal. First, the objectors argue that all signatures on the nominating petitions circulated by Charles Leslie were invalid because he listed an incorrect address on the circulator affidavits appearing on the petitions he circulated. Second, the objectors argue that the Board and the circuit court should have considered evidence showing that circulators Charles Leslie and Lawrence Weed regularly failed to swear their circulator affidavits before a notary. The Board did not consider the evidence as a basis for invalidating Leslie's and Weed's petitions because those specific allegations were not included in the objectors' petition, and the circuit court also concluded that it could not consider the evidence. Third, the objectors contend that once we consider Leslie's and Weed's repeated failure to swear their petitions before a notary, we should invalidate all of

the petitions they circulated because their conduct demonstrates a pattern of false swearing and a "systematic, blatant" disregard for the mandatory provisions of the Election Code (10 ILCS 5/1-1 (West 2008)).

¶ 3    After the parties submitted their briefs, we remanded the matter to the Board on an expedited basis to consider evidence that circulators Charles Leslie and Lawrence Weed regularly failed to personally appear before notary Lisa Hwang when swearing their petition sheets. We concluded that evidence of Leslie's and Weed's failure to personally appear before a notary was properly before the Board, and we instructed the Board to determine which petition sheets were rendered invalid and what effect this had on the total number of signatures supporting Cunningham's nomination. The Board found that the regular failure of Leslie and Weed to appear before the notary "evidence[d] a pattern of improper swearing that demonstrates a substantial disregard for the mandatory provisions of the Election Code." Accordingly, the Board determined that the total number of valid signatures in support of the candidate's nomination was 319, below the minimum required to appear on the primary ballot. We issued an order affirming the Board's decision. We now supplement our prior order and set forth the analysis that guides our decision.

¶ 4                                BACKGROUND

¶ 5    Cunningham sought to have his name placed on the Republican Party ballot for the office of Representative in Congress for the 11th Congressional District at the March 20, 2012 primary election. To qualify for the ballot, a candidate for Congress must file nominating papers with at least 600 valid signatures of registered voters in the congressional district. Cunningham submitted 1,265 signatures in support of his nomination.

¶ 6    Henry Schaeflein and Edmund Brezinski filed a petition objecting to the candidate's nominating papers on numerous grounds. The objectors first challenged several individual signatures. The objectors also alleged that circulators Charles Leslie and Lawrence Weed and notary Lisa Hwang engaged in a pattern of fraud and false swearing. This pattern of false swearing included (1) that Leslie listed an incorrect address on the circulator's affidavit on the petition pages he circulated; (2) that Hwang could not have properly notarized Leslie's petitions because he listed an incorrect address; and (3) that a number of the signatures on the petition pages circulated by Weed appeared to have been written by the same hand. The objectors sought to invalidate all petition sheets circulated by Leslie and Weed and all petition sheets notarized by Hwang.

¶ 7    Several hundred signatures were eliminated through a records examination process, and Cunningham was left with 780 presumptively valid petition signatures. A hearing officer then heard testimony from several witnesses on the merits of the objectors' petition.

¶ 8    On the first day of testimony, the hearing officer heard testimony from Charles Leslie's sister, Angela Potts. She testified that Leslie had lived with her at 9078 Emerson in Des Plaines, Illinois, while he was circulating petitions, but she believed he was now in Milwaukee. Charles Leslie was not available for testimony on the first day of the hearing, but he was later located and called to testify by the candidate. Leslie testified that he wrote his address incorrectly on the petition, and he was staying with his sister at 9078 Emerson–not

9708 Emerson. Leslie explained that he made the mistake because he was distracted by personal problems, including a divorce and unemployment. The objectors presented testimony from private investigator Lynn Bagley confirming that 9708 Emerson was not a valid address. Bagley testified that she could not locate the address of 9708 Emerson, Des Plaines, Illinois, and could find no evidence that that address exists.

¶ 9 Charles Leslie also provided extensive testimony about his work as a circulator and the process by which his petition sheets were notarized. Leslie testified that he never wrote anyone else's name on the petition sheets and always witnessed the signer sign the petition sheet. He also described his interactions with Lisa Hwang, who notarized all of his petitions. Leslie went to see Hwang two times, but after that he would hand his petition sheets in to Rodney McCulloch, a political consultant. When asked if he always "personally [went] before the notary," Leslie responded that "the first couple of times, I did. After that, I just handed them in and I signed off on them ***." When asked if Hwang was there every time Leslie handed in a petition, he testified, "I just don't remember. I can't say for certain," and added that "[w]hen we'd get there, we would just be in a rush to turn in our petitions and go." Hwang notarized Leslie's petitions for Cunningham on three different dates in November and December 2011.

¶ 10 Circulator Lawrence Weed provided a similar account of his experience with the circulation of petitions and the notarization process. Weed acknowledged that it was his practice to sign the circulator's affidavit on a number of petition sheets either before obtaining any signatures on those sheets or before the sheets were completed. When asked if he submitted his petition sheets to anyone before having them notarized, Weed stated that "sometimes yes *** I would give them to [Rodney McCulloch]." When asked if he received the sheets back to appear before the notary in person, Weed stated that "[w]hen they were complete, I would give them to [McCulloch] *** [a]nd he would take them to the notary." While all of Weed's petitions were notified by Hwang, Weed indicated that he met Hwang "once or twice" and stated, "I think she notarized a few of the papers that [McCulloch] had ***." The petitions that Weed circulated in support of Cunningham's candidacy list five different notarization dates in November and December 2011.

¶ 11 Lisa Hwang first testified that she would not have notarized a petition page if the circulator did not appear in front of her and that she always watched the circulator sign his or her name when she notarized petition sheets. Hwang testified that Leslie appeared before her "each and every time" she notarized his petition pages. After Weed and Leslie testified, however, Hwang confirmed that she would sometimes notarize the petitions of individuals who did not appear before her, after she established familiarity with the circulator and the circulator's signature. Hwang also testified that she would sometimes fill in portions of the affidavit for the circulator, but would never sign for the circulator. As for the petitions for candidate Jack Cunningham, Hwang explained that she would sometimes notarize petitions that had already been signed. Hwang remembered that McCulloch brought her petitions to notarize that had already been signed by Weed outside of her presence, and she testified that, based on the volume of sheets she notarized, she probably also notarized petitions that had already been signed by Leslie.

¶ 12 The objectors presented Lisa Hanson, a certified forensic document examiner, as an

expert witness. Hanson reviewed the petitions circulated by Leslie and Weed and opined that many of the signatures submitted by Weed and Leslie bore characteristics of common authorship. Among the 84 signatures Hanson identified during her testimony, she found several common authors. Hanson also testified that, in her opinion, certain address, city, and county information appeared to have been written by as many as three different authors. She specifically identified a single line of a petition that, in her opinion, had information written by three different authors.

¶ 13    On January 31, 2012, after receiving written summations from the parties, the hearing officer issued her report and recommended decision in the case. Although the hearing officer found the testimony of Weed, Leslie, and Hwang "clearly established a violation of the Election Code's requirement that a circulator appear before a notary," the hearing officer did not consider that evidence because it was "outside the scope of any issue" raised in the objectors' petition. The hearing officer also found that the "indications of common authorship" identified by Hanson did not constitute fraud and that there was no basis to invalidate *all* petitions notarized by Hwang because Leslie had provided an incorrect address. The hearing officer did recommend, however, that those petition sheets submitted by Leslie were invalid because Leslie failed to list his correct address. Because Leslie had "made a mistake when he listed his address," the hearing officer found that Leslie had not substantially complied with the address requirement. The hearing officer concluded that Leslie's petition sheets, which contained 254 valid signatures after the records examination, should be invalidated. The total number of valid signatures was therefore 526, below the 600 signatures required.

¶ 14    On February 2, 2012, the Board voted to adopt the recommendation of the hearing officer. The Board therefore did not certify Cunningham as a Republican candidate for nomination to the office of Representative in Congress for the 11th Congressional District.

¶ 15    Cunningham sought review of the Board's decision in the circuit court of Cook County, arguing that the petition sheets circulated by Leslie should not have been invalidated because he had substantially complied with the circulator address requirement. The objectors asked the circuit court to affirm the Board's decision regarding the error in Leslie's address. The objectors argued that even if the circuit court disagreed on the address issue, it should affirm the Board's decision on an alternative basis. The objectors contended that all circulated petition sheets from Leslie and Weed were invalid because they regularly did not appear before a notary when they swore to the affidavits on their petition sheets. In an order on February 21, 2012, the circuit court reversed the Board, finding that Leslie's petition sheets substantially complied with the circulator address requirement and that it could not reach the objectors' alternative argument.

¶ 16    On March 7, 2012, after the parties submitted their briefs, we remanded the matter to the Board to consider evidence that circulators Charles Leslie and Lawrence Weed regularly failed to personally appear before notary public Lisa Hwang when swearing their petition sheets. On March 12, 2012, the Board found that the regular failure of Leslie and Weed to appear before the notary "evidence[d] a pattern of improper swearing that demonstrates a substantial disregard for the mandatory provisions of the Election Code." The Board struck the petition sheets circulated by Leslie and Weed and determined that the total number of

valid signatures in support of the candidate's nomination was 319, below the minimum required to appear on the primary ballot. We issued an order affirming the Board's decision that Cunningham did not have enough valid signatures to support his nomination, with opinion to follow.

¶ 17                                ANALYSIS

¶ 18      On appeal, the objectors present two bases on which to affirm the Board's decision. First, the objectors contend that all signatures on the nominating petitions circulated by Charles Leslie were invalid because he listed an incorrect address in the affidavits appearing on the petitions he circulated. Second, the objectors argue that because Leslie and Weed regularly failed to appear before notary Lisa Hwang when swearing their petition sheets, they engaged in a pattern of false swearing and disregard for the requirements of the Election Code that requires invalidating all signatures on their petitions. We address each argument in turn.

¶ 19      This court reviews an electoral board's decision rather than the decision of the circuit court. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008). The applicable standard of review depends upon whether the question presented is one of fact, a mixed question of fact and law, or a pure question of law. *Id.* This court deems an electoral board's findings and conclusions on questions of fact to be *prima facie* true and correct, and we will not overturn such findings on appeal unless they are against the manifest weight of the evidence. *Id.*; *Goodman v. Ward*, 241 Ill. 2d 398, 405-06 (2011). A determination is against the manifest weight of the evidence when the opposite conclusion is clearly evident. *Cinkus*, 228 Ill. 2d at 210. Our supreme court has explained that where the historical facts are admitted or established, the controlling rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, the case presents a mixed question of fact and law for which the standard of review is " 'clearly erroneous.' " *Id.* at 211. An administrative agency's decision is deemed clearly erroneous "when the reviewing court is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Id.* Pure questions of law, including questions of statutory interpretation, are reviewed *de novo*. *Id.* Additionally, where the historical facts are established, but there is a question about "whether the governing legal provisions were interpreted correctly by the administrative body, the case presents a purely legal question for which [the court's] review is *de novo*." *Goodman*, 241 Ill. 2d at 406.

¶ 20                     Error in Circulator's Address

¶ 21      The objectors first argue that all petition sheets circulated by Charles Leslie are invalid because he failed to correctly list his address in the affidavit on each of the petition sheets he circulated. The Board agreed with this argument, but the circuit court did not. There is no dispute that Leslie listed 9708 Emerson as his street address, but he was in fact living at 9078 Emerson at the time he circulated the petitions. There is also no dispute that Leslie simply made a mistake in listing his address. The only question is whether Leslie's transposition of two numbers in his address renders his petition sheets and all signatures appearing on those sheets invalid. Here, where the question is whether the established facts constitute a violation

-6-

of an undisputed statutory provision, we consider whether the agency's decision was " 'clearly erroneous.' " *Cinkus*, 228 Ill. 2d at 211.

¶ 22    Section 7-10 of the Election Code requires that a petition circulator provide a signed, sworn statement "certifying that the signatures on that sheet of the petition were signed in his or her presence and certifying that the signatures are genuine *** and certifying that to the best of his or her knowledge and belief the persons so signing were at the time of signing the petitions qualified voters of the political party for which a nomination is sought." 10 ILCS 5/7-10 (West 2008). The circulator statement must also "stat[e] the street address or rural route number, as the case may be, as well as the county, city, village or town, and state." *Id.*

¶ 23    The affidavit requirement is a mandatory requirement of the Election Code. *Brennan v. Kolman*, 335 Ill. App. 3d 716, 719 (2002). Thus, the total failure to provide a circulator address as part of the circulator's affidavit renders all signatures on the petition invalid. See *Schumann v. Kumarich*, 102 Ill. App. 3d 454, 457-58 (1981). Substantial compliance can satisfy a mandatory provision of the Election Code, however, as even a mandatory provision does not require strict compliance. *Siegel v. Lake County Officers Electoral Board*, 385 Ill. App. 3d 452, 460 (2008). This court has held that substantial compliance with the circulator's affidavit requirement saves a petition sheet from being rendered invalid. See, *e.g.*, *Brennan*, 335 Ill. App. 3d at 719 (circulators' affidavits that failed to state that voters who signed the petition were registered voters substantially complied with Election Code, where opening line of petition stated that voters were registered); see also *Nolan v. Cook County Officers Electoral Board*, 329 Ill. App. 3d 52, 54, 56-57 (2002) (finding circulators' affidavits that failed to state that petition signers were qualified primary voters substantially complied with section 8-8 of the Election Code (10 ILCS 5/8-8 (West 2008)), where prefatory language on the petition indicated that signers were "qualified primary voters"). In considering provisions of the Election Code, we are mindful that "ballot [access] is a substantial right and not to be lightly denied." *Siegel*, 385 Ill. App. 3d at 460-61. Our supreme court has instructed we should "tread cautiously when construing statutory language which restricted the people's right to endorse and nominate the candidate of their choice." *Lucas v. Lakin*, 175 Ill. 2d 166, 176 (1997).

¶ 24    While the parties agree that substantial compliance with the circulator address requirement is possible, they point us to different decisions of this court to resolve the question in this case. The candidate argues that this court's decision in *Ryan v. Landek*, 159 Ill. App. 3d 10 (1987), is instructive here. In *Ryan*, the objector sought to invalidate a candidate's nomination because his papers did not contain his correct address, as required by the Election Code. *Id.* at 15. The candidate had provided his address but "the last digit was mistyped." *Id.* At the board's hearing, a sworn affidavit was presented which showed that the wrong address appeared as a result of a typographical error. *Id.* The court noted that the candidate's address is necessary to ensure that the candidate resides in the political division involved in the election, but the court explained that it had found no "case where a candidate's name was stricken from the ballot because of a minor typographical error." *Id.* The court distinguished cases where the circulator had completely failed to provide an address and held that "one mistyped digit in [the] candidate's nomination papers is not

sufficient to have his name removed from the ballot." *Id.* at 16.

¶ 25    The objectors argue that *Sakonyi v. Lindsey*, 261 Ill. App. 3d 821 (1994), is dispositive of the issue in this case. In *Sakonyi*, the court concluded that three petition sheets were not invalid because even though the circulator failed to list any address, the circulator's address was found on another petition sheet where the circulator had signed as a voter. *Id.* at 826. The court explained the "circulator's affidavit requirement is considered a meaningful and realistic method of eliminating fraudulent signatures and protecting the integrity of the political process." *Id.* Listing the address within the affidavit helps protect the integrity of the process by "enabl[ing] the [electoral board] to locate [the circulator], question her about the signatures, and hold her responsible for her oath." *Id.* at 825-26. The court concluded that because the circulator's address was found on one petition sheet, listing her address on other petition sheets was simply a matter of "administrative convenience." *Id.* at 826. Even where the address was absent, the circulator had signed each of her affidavits, and the electoral board heard "testimony assuring the integrity of [the circulator's] oath." Id.

¶ 26    We believe the instant case is similar to *Ryan*. While Leslie printed his address incorrectly on his affidavits, he later explained the error in testimony before the Board, confirmed that he had been living at 9078 Emerson, and testified regarding his collection of voters' signatures. We do not agree with the objectors that *Sakonyi* requires a different result. The objectors contend that *Sakonyi* stands for the proposition that substantial compliance with the circulator address requirement is *only* possible where the circulator's address is correctly written somewhere in the petition set. The *Sakonyi* court concluded that the complete absence of a circulator's address on a petition does not invalidate that petition where the circulator's correct address is found elsewhere on the petition sets. But it does not follow that a circulator's address with a minor mistake such as the one in this case must invalidate the petition if the correct address is not found elsewhere in the petition set. The error in the address in this case did not preclude the parties from locating the circulator and holding him to his oath. After accepting service of the subpoena on behalf of Leslie, the candidate was able to locate Leslie's sister at 9078 Emerson. There was a delay of a few days in locating Leslie, but as his sister explained, Leslie was no longer living at 9078 Emerson at the time of the hearing. We agree with the circuit court that "whether the numerical address had been correct or not he would not have been serveable at the Emerson address." Under these circumstances, where Leslie mistakenly transposed two digits in his street address on his petition sheets, yet he was located and able to testify before the Board, the minor error in the circulator's address should not serve to invalidate all petitions circulated by him.

¶ 27    Our holding should not be read to excuse a circulator's complete failure to include his address as part of the affidavit. In this particular case, Leslie provided his street name, city, and state, but transposed two numbers in the street address. This is not a case of complete failure to record any address. See *Schumann v. Kumarich*, 102 Ill. App. 3d 454, 457-58 (1981) (finding complete absence of circulator address invalidated all signatures on petition); see also *Siegel*, 385 Ill. App. 3d at 460 (finding substantial compliance with requirement that voter's resolution included a date, even though date was incorrect because of a "scrivener's error," and distinguishing those cases where no date was listed as cases of complete

noncompliance). Nor is this a case where Leslie acted in an effort to mislead the Board. Ultimately, even with the error in the address, the candidate was able to locate Leslie and bring him before the Board to confirm his address and describe the circulation and notarization process in detail. See *Sakonyi*, 261 Ill. App. 3d at 826.

¶ 28 We are mindful both that the provisions of the Election Code are designed to protect the integrity of the electoral process and that access to a place on the ballot is a substantial right not lightly to be denied. *Welch v. Johnson*, 147 Ill. 2d 40, 56 (1992). Here, the mistaken transposition of two digits in the address did not affect the substance or validity of the circulator's statement; listing the circulator's address is simply the method used by the Election Code to locate a circulator in the event he is needed to testify before an electoral board. See *O'Connor v. Cook County Officers Electoral Board*, 281 Ill. App. 3d 1108, 1112 (1996) ("The circulator's statement must 'state' certain facts about the circulator and must 'certify' other facts relating to the circulation of the petition and the signatures upon it."). Leslie's innocent, minor error in recording his address did not prevent him from being located, and it did not put the integrity of the political process in jeopardy. See *Sakonyi*, 261 Ill. App. 3d at 826. We therefore affirm that portion of the circuit court's decision that reversed the Board's decision to invalidate the petition sheets circulated by Charles Leslie based on the transposition of two digits in his address.

¶ 29 Circulators' Failure to Appear Before the
Notary When Swearing Petition Sheets

¶ 30 The objectors next argue that this court should affirm the Board's decision in light of an additional violation of the Election Code. The objectors contend that Leslie's and Weed's repeated failure to swear their petition pages before a notary constitutes a pattern of disregard for the mandatory requirements of the Election Code that requires the invalidation of all signatures on their petition pages. See 10 ILCS 5/7-10 (West 2008) (A circulator's statement "shall be sworn to before some officer authorized to administer oaths in this State."). While the hearing officer determined that the evidence before the Board "clearly established a violation of the Election Code's requirement that a circulator appear before a notary" to swear his petition sheets, the Board, citing this court's decision in *Delay v. Board of Election Commissioners*, 312 Ill. App. 3d 206 (2000), found that it could not reach the issue because that specific contention was not included on the objector's petition. We review the Board's conclusions of law *de novo*. *Cinkus*, 228 Ill. 2d at 211.

¶ 31 An electoral board "is a creature of statute and may exercise only those powers conferred upon it by the legislature." *Delay v. Board of Election Commissioners*, 312 Ill. App. 3d 206, 209 (2000) (citing *Kozel v. State Board of Elections*, 126 Ill. 2d 58, 68 (1988)). Section 10-8 of the Election Code explains that the "objector's petition *** shall state fully the nature of the objections to the certificate of nomination or nomination papers." 10 ILCS 5/10-8 (West 2008). The role of an electoral board is to "decide whether or not the certificate of nomination or nominating papers or petitions on file are valid or whether *the objections thereto* should be sustained." (Emphasis added.) 10 ILCS 5/10-10 (West 2008). What is clear, then, is that it is "the unique province of the objector" to "raise issues [and] objections"

to the certificate of nomination or nominating papers. *Mitchell v. Cook County Officers Electoral Board*, 399 Ill. App. 3d 18, 27 (2010). An electoral board cannot "raise its own objections to nominating petitions *sua sponte.*" *Delay*, 312 Ill. App. 3d at 210; accord *Mitchell*, 399 Ill. App. 3d at 27. While the board cannot raise its own objections apart from those raised by the objector, this court has held that "when in the course of hearing objections to nominating papers, evidence beyond specific objections comes to the electoral board's attention, it cannot close its eyes and ears if evidence is relevant to the protection of the electoral process." (Internal quotation marks omitted.) *Fortas v. Dixon*, 122 Ill. App. 3d 697, 701 (1984); *Canter v. Cook County Officers Electoral Board*, 170 Ill. App. 3d 364, 368 (1988).

¶ 32    The candidate argues that despite the rule announced in *Fortas*, this court's decision in *Delay v. Board of Election Commissioners*, 312 Ill. App. 3d 206 (2000), prevented the Board from considering evidence of the circulators' failure to appear before a notary. In *Delay*, the objectors set forth two separate allegations challenging the candidate's nomination. *Id.* at 207. When the matter came before the board, the objector's attorney informed the board that the candidate had pled guilty to a felony, which was unrelated to any of the allegations in the objection petition. *Id.* While the board found that the candidate was ineligible to be a candidate in light of candidate's plea agreement, the appellate court concluded that the issue was not properly before the board. *Id.* at 210. In reaching its decision, the court did not "quarrel with the holding in *Fortas* or its progeny" (*id.* at 208), but instead distinguished those cases:

> "The common denominator in [*Fortas* and *Canter*] is that the evidence considered by the electoral board, or which should have been considered, although going to the validity of signatures that had not been specifically objected to, still went to the general objection that the candidate was called upon to answer, namely: whether his nominating petitions contained a sufficient number of valid signatures to satisfy the statutory minimum." *Id.* at 209.

The *Delay* court found that in the case before it, the objector had listed two specific objections to the candidate's nominating papers, but where neither related to the plea agreement, the board exceeded its authority by invalidating the candidate's nominating papers on that basis. *Id.* at 210.

¶ 33    *Delay* thus establishes that when "evidence beyond specific objections" is introduced during the proceedings, that evidence must at least bear on some "general objection that the candidate was called upon to answer" in the objector's petition. (Internal quotation marks omitted.) *Id.* at 209. In this case, evidence of instances of Leslie's and Weed's failure to appear before the notary was properly before the Board. While the objectors' petition did not include a specific allegation regarding the circulators' failure to appear before the notary, evidence of that failure was elicited as part of the inquiry into the objectors' contention that the candidate had failed to gather the minimum number of signatures to support his nomination. The evidence actually goes to an even more precise argument in the present case, as the objectors alleged in their petition that the circulators were engaged in a pattern of fraud, false swearing, and total disregard for the requirements of the Election Code. The objectors have presented this argument at every stage in the proceedings.

-10-

¶ 34    The candidate next argues this court cannot consider evidence of improper swearing because the objectors did not file a petition for judicial review in the circuit court. The circuit court apparently agreed with this contention, finding that it could not consider the issue because it was not "properly raised by pleadings." The candidate points to portions of section 10-10.1 of the Election Code, which state that "[t]he party seeking judicial review must file a petition" and require the petition to "contain a brief statement of the reasons why the decision of the board should be reversed." 10 ILCS 5/10-10.1 (West 2008). The first sentence of section 10-10.1, however, states that it is the "candidate or objector *aggrieved by the decision of an electoral board*" who may secure judicial review. (Emphasis added.) *Id.* As this court has explained, the prevailing party before an election board–who is by definition not aggrieved by the decision–need not file a cross-appeal to preserve issues on which that party did not prevail. *Jakstas v. Koske*, 352 Ill. App. 3d 861, 865 (2004). This court may affirm an electoral board's decision on any basis that appears in the record, even though the electoral board may have relied on another basis to support its decision. *Id.* at 865; *Harmon v. Town of Cicero Municipal Officers Electoral Board*, 371 Ill. App. 3d 1111, 1116 (2007).

¶ 35    Having found that evidence regarding the failure of Leslie and Weed to appear before the notary is properly before us, we turn to the merits. Section 7-10 of the Election Code states that a circulator's affidavit "shall be sworn to before some officer authorized to administer oaths in this State." 10 ILCS 5/7-10 (West 2008). The Illinois Supreme Court has explained that "the failure of the circulator to personally appear before the notary public invalidates the petition." *Bowe v. Chicago Electoral Board*, 79 Ill. 2d 469, 470 (1980) (citing *William v. Butler*, 35 Ill. App. 3d 532 (1976)); see also *Shipley v. Stephenson County Electoral Board*, 130 Ill. App. 3d 900, 906-07 (1985). On remand, we asked the Board to consider evidence that circulators Weed and Leslie failed to personally appear before notary public Lisa Hwang when swearing their petition sheets and to determine how this affected the total number of valid signatures in support of Cunningham's nomination. The Board invalidated all petition sheets circulated by Leslie and Weed because their repeated failure to appear before the notary constituted a pattern of improper swearing and substantial disregard for the mandatory provision of the Election Code.

¶ 36    In the present case, the Board found that there was an "admitted failure" by Weed and Leslie to personally appear before a notary on a regular basis, and that notary Hwang admitted that she "routinely notarized sheets without the circulators present." We view these factual findings to be *prima facie* true and correct, and we will not overturn such findings unless they are against the manifest weight of the evidence. *Cinkus*, 228 Ill. 2d at 210. Here there was clear testimony from both circulators that they signed their petition sheets outside the presence of a notary. Weed acknowledged that it was his practice to sign the circulator's affidavit on a number of petition sheets either before obtaining any signatures on those sheets or before the sheets were completed, and he confirmed that he would submit his completed petition sheets to political consultant Rodney McCulloch and would assume that they would get notarized. When trying to describe notary Lisa Hwang, Weed said he thought he met her "once or twice." Leslie provided a similar account, explaining that he would typically sign the petitions and hand them in to McCulloch. Leslie testified that he saw Hwang only twice, or "the first couple of times," but after that "he just handed them in and *** signed off on

them." While notary public Lisa Hwang first testified that the circulators always appeared before her to swear their petitions, she admitted, only after both Weed and Leslie testified, that she had notarized petitions of circulators who did not personally appear before her if the circulator's name or signature was familiar to her. For these circulators, appearing in person before the notary to swear their petition sheets was plainly out of the ordinary, not the common practice. The Board's determination that Weed and Leslie regularly failed to appear before Hwang to swear their petition sheets was not against the manifest weight of the evidence.

¶ 37     The Board, relying on this court's decisions in *Fortas*, *Canter*, and *Huskey v. Municipal Officers Electoral Board*, concluded that the pattern of improper swearing demonstrated a "substantial disregard for the mandatory provisions of the Election Code" that justified striking all the petitions sheets circulated by Leslie and Weed. See *Fortas*, 122 Ill. App. 3d at 701; *Canter*, 170 Ill. App. 3d at 368; *Huskey v. Municipal Officers Electoral Board*, 156 Ill. App. 3d 201, 205 (1987). We find that the appropriate standard of review on this question is *de novo*. Our supreme court has explained that where the historical facts are established, but there is a question about "whether the governing legal provisions were interpreted correctly by the administrative body, the case presents a purely legal question for which our review is *de novo*." *Goodman v. Ward*, 241 Ill. 2d 398, 406 (2011).[1]

¶ 38     Initially, we acknowledge that it is possible, based on the Board's factual findings, that Leslie and Weed never appeared before a notary when signing the petitions sheets supporting Cunningham's nomination. Although Leslie or Weed did appear before a notary on one or two instances, it is unclear whether the circulators even were circulating petitions for Cunningham at that point, as both Weed and Leslie circulated petitions for candidates other than Cunningham. We thus share the skepticism of the Board's general counsel, who explained in his recommendations that "it is quite possible that when [Leslie and Weed] mentioned appearing before the notary, they were referring to instances where they executed the circulator's affidavits of other candidates' petitions"–not Cunningham's.

¶ 39     Setting aside the possibility that all petition sheets Weed and Leslie circulated for Cunningham were improperly sworn, we conclude that the pattern of improper swearing in this case requires the invalidation of all sheets circulated by Weed and Leslie. This court has recognized that where the sheets of a nominating petition submitted by a circulator evidence a pattern of fraud, false swearing, and total disregard for the requirements of the Election Code, the sheets circulated by that individual should be stricken in their entirety. *Canter*, 170 Ill. App. 3d at 368 (citing *Huskey*, 156 Ill. App. 3d at 205); accord *Crossman v. Board of Election Commissioners*, 2012 IL App (1st) 120291, ¶ 11. For example, in *Huskey*, the circulator allowed some individuals to sign the names of family members not present, and "at least half of the time," someone other than the circulator presented the petition sheet to

---

[1]We note that this court has also applied a "clearly erroneous" standard in the "pattern of fraud" context. See *Crossman v. Board of Election Commissioners*, 2012 IL App (1st) 120291, ¶ 9. Even if we review the Board's decision under that more deferential standard, our decision to affirm the Board's findings would be the same.

signers. *Huskey*, 156 Ill. App. 3d at 205. The appellate court "agree[d] with the trial court's finding that this evidence constitutes a pattern of disregard for the mandatory requirements of the Election Code and affects the integrity of the political process. The fact that the circulator misunderstood her instructions or was not properly instructed and thus did not have fraudulent intent does not alter our holding." *Id.* The court concluded that all the signatures on the petition sheets signed by that circulator should be struck. *Id.* at 206.

¶ 40    While *Huskey* involves a pattern of disregard for the rules governing the circulation process, the evidence in this case reveals a pattern of substantial disregard for a different, but no less important, provision of the Election Code: the requirement that the circulator's "statement shall be sworn to *before* some officer authorized to administer oaths." (Emphasis added.) 10 ILCS 5/7-10 (West 2008); *Bowe v. Chicago Electoral Board*, 79 Ill. 2d 469, 470 (1980). That requirement, like the rules governing the circulation of petition sheets, ensures the integrity of the circulation process, and in turn, the political process. *Williams v. Butler*, 35 Ill. App. 3d 532, 537 (1976). In his oath, the circulator must certify that (1) the signatures on that sheet of the petition were signed in his or her presence; (2) the signatures are genuine; (3) the signatures were gathered during a specific period; and (4) to the best of his or her knowledge and belief, the signers were at the time of signing the petitions qualified voters of the political party for which a nomination is sought. See 10 ILCS 5/7-10 (West 2008). By swearing to his statement in the presence of a notary, the circulator "subject[s] himself to possible perjury prosecution." *Williams v. Butler*, 35 Ill. App. 3d 532, 536 (1976). This court has explained that this "is a meaningful and realistic requirement designed to eliminate fraudulent signatures or perhaps a signing of large numbers of names to petitions by a few people." *Id.*; accord *Sakonyi v. Lindsey*, 261 Ill. App. 3d 821, 826 (1994). In other words, the swearing requirement gives meaning to the circulator's statement that he complied with the provisions of the Election Code when circulating his petitions. Although the requirement does not govern the actual process by which petitions are circulated, it nevertheless protects the integrity of the circulation process.

¶ 41    In light of the requirement's important function, our supreme court has concluded that the proper remedy for the failure to swear the oath on a petition sheet before a notary is the invalidation of all signatures on that sheet. *Bowe v. Chicago Electoral Board*, 79 Ill. 2d 469, 470 (1980) (citing *Williams v. Butler*, 35 Ill. App. 3d 532 (1976)). Following our supreme court's decision in *Bowe*, as well the decisions of this court in *Huskey* and related cases, we agree with the Board that the pattern of disregard for the mandatory swearing requirement in this case casts a cloud over all sheets notarized by Hwang, even if the evidence does not establish that every instance of swearing was improper. In *Huskey*, for example, while the evidence reflected improper circulation methods for some, but not all, petition sheets, the court concluded that it was proper to invalidate all the petition sheets bearing the circulator's signature, where the sworn statement of the circulator appearing on all the petition sheets was effectively meaningless in light of the evidence of improper circulation practices. *Huskey*, 156 Ill. App. 3d at 205; see also *Harmon v. Town of Cicero Municipal Officers Electoral Board*, 371 Ill. App. 3d 1111, 1116 (2007) (where 50% or more of the signatures on petition sheets were found invalid, electoral board found that these pages evidence a pattern of false swearing and it was proper to invalidate all signatures on those sheets). Similarly, here both

circulators and the notary confirmed that it was a general practice for the circulators to sign their sheets outside the presence of the notary, though the circulators did appear in person before the notary once or twice. Even more troubling, at the hearing before the Board, the notary materially changed her account of her notarization practices, first claiming that she would never notarize petition sheets that were not sworn before her, and only later admitting that she would often notarize petitions that were not properly sworn. While Hwang's notary seal normally carries a guarantee that the petition sheets were properly sworn before her, it cannot be trusted in this case. The testimony from Weed and Leslie–and especially Hwang–calls into question the notarization practice for all sheets signed by Weed and Leslie.

¶ 42    Again, we are cognizant that access to a place on the ballot is a substantial right not lightly to be denied. *Welch*, 147 Ill. 2d at 56. In this particular case, however, the pervasive and cavalier disregard for the Election Code's mandatory requirement that circulators swear their petition sheets before a notary threatened the integrity of the electoral process. See *Huskey*, 156 Ill. App. 3d at 205; *Siegel*, 385 Ill. App. 3d at 460. We agree with the Board that the proper remedy was to strike all petition sheets circulated by Leslie and Weed that were purportedly sworn before Hwang. Cunningham therefore did not have the minimum number of valid signatures required for his name to appear on the primary ballot.

¶ 43                                        CONCLUSION

¶ 44    For the reasons above, we affirm the Board's finding that the repeated failure of circulators Leslie and Weed to appear before notary Hwang evidenced a pattern of improper swearing that demonstrates a substantial disregard for the mandatory provisions of the Election Code. We therefore affirm the Board's decision that the candidate's nomination papers did not contain the required number of valid signatures for his name to appear on the primary ballot. We reverse that portion of the decision of the circuit court that found that it could not consider the improper swearing, and we affirm that portion of the circuit court's decision that reversed the Board's decision to strike Leslie's petition sheets based on the transposition of two digits in his address. In light of the evidence of record regarding Lisa Hwang's notarization practices, we direct the clerk of this court to forward a copy of this opinion to the Illinois Secretary of State for appropriate action regarding Hwang's commission as a notary public.

¶ 45    Affirmed in part and reversed in part.