2016 IL App (3d) 160021

Opinion filed March 9, 2016

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2016

| | | |
|---|---|---|
| JACK A. SCHWARTZ, | ) | Appeal from the Circuit Court |
| | ) | of the 14th Judicial Circuit, |
| Petitioner-Appellant and | ) | Rock Island County, Illinois, |
| Cross-Appellee, | ) | |
| | ) | |
| v. | ) | Appeal No. 3-16-0021 |
| | ) | Circuit Nos. 15-MR-1131, 15-MR-1132 |
| KAREN KINNEY, Rock Island County Clerk; | ) | and 15-MR-1165 |
| LOUISA A. EWERT and CHRISTINA | ) | |
| PAYNE, Members of the Rock Island Electoral | ) | |
| Board; and DOUGLAS E. HOUSE, | ) | |
| | ) | Honorable |
| Respondents-Appellees and | ) | Jeffrey O'Connor, |
| Cross-Appellants. | ) | Judge, Presiding. |

PRESIDING JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Justice Carter concurred in the judgment and opinion.
Justice Holdridge specially concurred, with opinion.

**OPINION**

¶ 1        Petitioner, Jack A. Schwartz, sought to be placed on the 2016 Democratic primary ballot

as a candidate for Rock Island County State's Attorney.  Respondents, Karen Kinney, Louisa A.

Ewert, Christina Payne, and Douglas E. House, brought two objections to petitioner's candidacy.

The objections were grounded upon: (1) petitioner's alleged failure to properly identify the

circulator on his nominating petitions; and (2) petitioner's residence.

¶ 2  The Rock Island electoral board (the Board) overruled respondents' residency objection. However, it allowed the circulator objection. Consequently, the Board struck petitioner's nomination and excluded his name from the primary ballot on the basis of the circulator objection. The circuit court affirmed the Board's decision. Petitioner now appeals the circulator finding. Respondents, in turn, cross-appeal the residency finding.

¶ 3  Upon review, we hold the Board correctly allowed the circulator objection. We therefore affirm the Board's decision striking petitioner's nomination and excluding his name from the primary ballot. We do not address respondents' cross-appeal–the residence objection.

¶ 4                                    FACTS

¶ 5  The Board allowed the circulator objection on the grounds that the circulator's signature on certain nomination petitions did not match the typed name found in the circulator affidavit. Each nomination petition contains 10 individual voter signatures supporting petitioner's candidacy. All of petitioner's nomination petitions include the typed name of petitioner in the affidavit paragraph, which is found at the bottom of each page. However, several petitions are sworn to and signed by Amy Schwartz, not petitioner. Amy is petitioner's wife. Below is a copy of one of the affidavits signed by Amy.

I, __Jack Schwartz__ _(Circulator's Name) do hereby certify that I reside at _921 Mississippi___ in the City/Village/Unincorporated Area (circle one) of __Davenport_____ (if unincorporated, list municipality that provides postal service) (Zip Code) _52803_, County of _Scott_____, State of _Iowa_____ that I am 18 years of age or older, that I am a citizen of the United States, and that the signatures on this sheet were signed in my presence, not more than 90 days preceding the last day for filing of the petitions and are genuine and that to the best of my knowledge and belief the persons so signing were at the time of signing the petition qualified voters of the __Democratic_____ Party in the political division in which the candidate is seeking nomination/elective office, and that their respective residences are correctly stated, as above set forth.

                                                                                (Circulator's Signature)
Signed and sworn to (or affirmed) by __Amy Schwartz_____ before me, on _4/27/15___
                                          (Name of Circulator)              (insert month, day, year)

(SEAL)    OFFICIAL SEAL
          THERESA BURROW
          Notary Public - State of Illinois          _Theresa Burrow_
          My Commission Expires 10/14/2018          (Notary Public's Signature)

                              SHEET NO. __12__                        C000020

2

¶ 6    Amy testified before the Board as follows:

"Mr. Fieweger [petitioner's counsel] asked, 'Is that your signature on the bottom of those pages?'

Ms. Schwartz answered, 'Yes.'

Mr. Fieweger asked, 'Were you the circulator of those petitions?'

Ms. Schwartz answered, 'Yes.'

Mr. Fieweger asked, 'Do you live at 921 Mississippi…uh…'

Ms. Schwartz answered, 'Yes.'

* * *

Mr. Fieweger asked, 'And, did you have your signature witnessed by a notary public on each of those pages?'

Ms. Schwartz answered, 'Yes.'

Mr. Fieweger stated, 'I have no further questions.  Thank you.'

Ms. Schwartz asked Jack [petitioner], 'Jack, do you want to say we were together at the time they were filed or circulated them or…?'

Mr. Fieweger stated, 'Sure.  Who was with you when these were circulated?'

Ms. Schwartz answered, 'Jack and I got all the signatures together.  So, he was present at the time all those signatures were gotten and we are married and live at the same address.'

* * *

3

Ms. Clark [respondents' counsel] asked, 'So, you said that your husband was…that you claim that your husband was present when each of those 31 petitions was signed by each of those people, is that right?'

Ms. Schwartz answered, 'Yes.'

Ms. Clark asked, 'So, why did you sign under his name, then?'

Ms. Schwartz answered, 'I did not sign…I don't understand.  It…'

Ms. Clark interrupted, 'Why did you sign them, instead of him?'

Ms. Schwartz answered, 'Why did I sign?  Because I was there.'

Ms. Clark asked, 'And he was, too, according to you, correct?'

Ms. Schwartz answered, 'Yes.'

Ms. Clark answered, 'Okay, nothing further.' "

¶ 7        Petitioner also testified before the Board.

"Mr. Fieweger asked, 'Were you present during the time in which the petitions were signed by voters?'

Mr. Schwartz answered, 'Yes, I was with her at all times.'

Mr. Fieweger asked, 'And, by her, who is her?'

Mr. Schwartz answered, 'My wife.'

Mr. Fieweger stated, 'Okay.  I have no further questions.'

* * *

Ms. Clark asked, 'You claim to have been present for each and every signature that was put on your petition sheets, is that right?'

4

Mr. Schwartz asked, 'Yes, would you like for me to tell you where we got them?'

Ms. Clark answered, 'Including the Mercer County ones?  The Henry County ones?  The Scott County one?…did I say the Henry County one?  Including all those?'

Mr. Schwartz answered, 'We may have gotten some out of the county, but we went to the two bowling alleys in Rock Island.  We got them in one night or two nights.  And then, we got the rest of them at that Walmart.  We were there one night, late, and there was another one of my clients there who helped me gather some of those names.  But my wife and I were present for all of the names that we got.'

*  *  *

Ms. Clark stated, 'They [the petitions] are facially inaccurate, are they not?'

Mr. Schwartz answered, 'They comply sustainably [*sic*] with the law that's required by the State of Illinois.'

Ms. Clark asked, 'Do you have council [*sic*], or do you want to testify about the facts?'

Mr. Schwartz stated, 'You asked me to testify, I am telling you my opinion.  They simply comply substantially…'

Ms. Clark interrupted, 'I am not asking for your legal opinion, Mr. Schwartz, I am asking for your factual testimony as to whether the petition sheets are accurate.'

5

Mr. Schwartz answered, 'They're accurate.'

Ms. Clark asked, 'And then you stated, subsequently, that you don't think it matters, is that right?'

Mr. Schwartz answered, 'No. What I stated was…is that they comply substantially with the law.' "

¶ 8        Upon the conclusion of the hearing, the Board allowed the circulator objection. Specifically, the Board stated:

"That thirty (30) pages of the Petitions for Nomination filed by the *** Candidate, Jack Schwartz, are not property certified in that the typed name of the petition circulator and the signature of the circulator are two different individuals and the signatures of electors on those nominating petitions are disallowed. The *** Candidate is required to present the signatures of a minimum of 168 valid elector signatures to become a candidate for nomination and as a result of this decision to disallow thirty (30) pages that are not properly certified, the *** Candidate has presented only fifty (50) valid elector signatures on his Petitions for Nominations."

¶ 9                                          ANALYSIS

¶ 10        Petitioner argues the Board erred in disallowing the petitions signed by Amy. Specifically, petitioner argues that "[t]he disqualified petitions substantially complied with the requirements of the circulator's attestation clause under 10 ILCS 5/7-10." Because neither the circulator affidavit nor the testimony of Amy and/or petitioner reveal who the circulator of the petitions was, we uphold the Board's decision disallowing the petitions.

¶ 11 "Where, as here, judicial review of an electoral board's decision is sought pursuant to ***

the Election Code [citation], the proceeding is in the nature of administrative review." *Jackson*

*v. Board of Election Commissioners*, 2012 IL 111928, ¶ 46. When such proceedings reach the

appellate level, it is the election board's decision, not the decision of the circuit court, which we

review. *Id.*

¶ 12 "Where the historical facts are admitted or established, but there is a dispute as to

whether the governing legal provisions were interpreted correctly by the administrative body,

the case presents a purely legal question for which our review is *de novo ***.*" *Id.* ¶ 47. The

salient facts in the instant case are uncontroverted: (1) petitioner's name is typed as "(Circulator's

Name)" at the top of the affidavit; (2) Amy signed her name as "(Name of Circulator)" at the

bottom of the affidavit; and (3) both petitioner and Amy testified they were together and present

when the nomination petitions were signed by voters. The issue is, given those facts, whether

the petitions signed by Amy substantially comply with section 7-10 of the Election Code (Code)

(10 ILCS 5/7-10 (West 2014)).

¶ 13 In examining section 7-10, we are guided by familiar principles. The supreme court has

explained:

>       "The primary goal of statutory construction, to which all other rules are
>
>       subordinate, is to ascertain and give effect to the intention of the legislature. The
>
>       best indication of legislative intent is the language used in the statute itself. The
>
>       statute should be evaluated as a whole, with each provision construed in
>
>       connection with every other section. When the statutory language is clear, we
>
>       must apply the statute as written without resort to other tools of construction."
>
>       *Jackson,* 2012 IL 111928, ¶ 48.

7

¶ 14	Section 7-10 of the Code provides, in pertinent part:

> "The name of no candidate for nomination *** shall be printed upon the primary ballot unless a petition for nomination has been filed in his behalf as provided in this Article in substantially the following form:
>
> * * *
>
> ***At the bottom of each sheet of such petition shall be added *a circulator statement* signed by *a person* 18 years of age or older who is a citizen of the United States, *** certifying that to the best of *his or her* knowledge and belief the persons so signing were at the time of signing the petitions qualified voters of the political party for which a nomination is sought.***
>
> ***
>
> *The person* circulating the petition, or the candidate on whose behalf the petition is circulated, may strike any signature from the petition ***." (Emphases added.) 10 ILCS 5/7-10 (West 2014).

¶ 15	In the interest of clarity, we initially address whether section 7-10 allows for cocirculators–both petitioner and Amy. While we are aware of no Illinois case which discusses cocirculators, we emphasize the legislature's consistent use of the singular tense–"a circulator statement," "a person," "his or her," and "[t]he person." *Id.* We also note that the affidavit itself only provides one signature line. Affording section 7-10 its plain, ordinary, and popular meaning, we conclude that it does not allow for cocirculators. Therefore, because the affidavit contains two different names (petitioner's typed name and Amy's signature), we find the petitions to be *facially* invalid. We now turn to the question of whether the petitions substantially complied with section 7-10 of the Code.

8

¶ 16    The circulator's affidavit requirement is a mandatory requirement of the Code. *Brennan v. Kolman*, 335 Ill. App. 3d 716, 719 (2002). "[T]he circulator's affidavit requirement is considered a meaningful and realistic method of eliminating fraudulent signatures and protecting the integrity of the political process." *Sakonyi v. Lindsey*, 261 Ill. App. 3d 821, 826 (1994). Substantial compliance with the circulator's affidavit requirement can save a nomination petition from being rendered invalid. *Nolan v. Cook County Officers Electoral Board*, 329 Ill. App. 3d 52, 56 (2002) (circulators' affidavits that failed to state that voters who signed the petition were registered voters substantially complied with the Code, where the opening line of the petition stated that voters were registered).

¶ 17    While petitioner and Amy both testified they were present at the time the voters signed the petitions, we do not have any clarity as to who actually was the circulator. Because the affidavit itself does not answer this question, substantial compliance can only be established through the testimony of Amy and/or petitioner. Neither Amy's testimony, nor petitioner's testimony, however, reveals who the circulator of the petitions was. All we have is generic testimony that both were *present*. We have already held, however, that both cannot simultaneously be the circulator. *Supra* ¶ 15. The evidence presented at the Board hearing simply does not reveal which of the two was the circulator.

¶ 18    Amy and petitioner's testimony are also generic in the sense that their presence is consistently referenced in the context of "all the signatures." For example, Amy testified "Jack and I got all the signatures together." Petitioner testified "[M]y wife and I were present for all of the names that we got." Neither identified the petitions individually. Instead, they consistently referenced the signatures/petitions in a general context. Accordingly, we hold the generic testimony of two individuals that they were present for the signing of all the signatures/names

9

does not establish substantial compliance with the circulator requirements contained in section 7-10 of the Code.

¶ 19    In coming to this conclusion, we reject petitioner's reliance on *Moscardini v. County Officers Electoral Board of Du Page County*, 224 Ill. App. 3d 1059 (1992). The court in *Moscardini* held that if the circulator of a petition actually saw each of the signatories sign it, there is no violation of section 7-10, even if the circulator did not physically present the petition to some of them. *Id.* at 1062-63. Unlike the instant case, however, the affidavit in *Moscardini* was not facially invalid and there was no ambiguity as to the identity of the circulator. Stated another way, the court in *Moscardini* knew exactly who the circulator of the petition was. We find *Moscardini* distinguishable on this ground alone.

¶ 20    Likewise, we find *Nolan* distinguishable. The court in *Nolan* held that while the circulator's affidavit was devoid of any reference to the specific legislative district, such information could be gleaned from information found elsewhere in the nominating petition. *Nolan*, 329 Ill. App. 3d at 56. The petitions in the instant case, however, do not offer any information clarifying the ambiguity as to the identity of the circulator. Nor does the testimony of Amy or petitioner.

¶ 21    Lastly, we reject petitioner's reliance on *Cunningham v. Schaeflein*, 2012 IL App (1st) 120529. The court in *Cunningham* held that the circulator's error in mistakenly transposing two digits in the circulator's street address did not invalidate the nomination petitions. *Id.* ¶ 26. Specifically, the court reasoned that the error in the address "did not preclude the parties from locating the circulator and holding him to his oath." *Id.* Like *Moscardini*, the identity of the circulator in *Cunningham* was known. Furthermore, we believe *Cunningham* actually supports

10

our holding in the instant case as it shows the inherent necessity that the identity of the circulator be known.  See *id.*  Here, we have no such certainty.

¶ 22                                          CONCLUSION

¶ 23         For the foregoing reasons, we affirm the Board's decision striking petitioner's nomination and excluding his name from the primary ballot.[1]

¶ 24         Affirmed.

¶ 25         JUSTICE HOLDRIDGE, specially concurring.

¶ 26         I join in the majority's judgment.  I write separately to clarify the analysis governing challenges to a circulator's attestation clause under section 7-10 of the Code (10 ILCS 5/7-10 (West 2014)).  As the majority notes, the nomination petitions signed by Amy Schwartz in this case are facially invalid under section 7-10 because the affidavits contained in those petitions do not unambiguously identify the circulator.  In my view, that should be the end of the matter. Section 7-10 requires that a single, identifiable circulator sign the affidavit making the required attestations.  Because the petitions signed by Amy Schwartz do not satisfy this requirement, they fail as a matter of law.  This failure cannot be cured by subsequent testimony.  That is why the Commission decided this issue as a matter of law without discussing the witness testimony presented at the hearing.  In my view, we should take the same approach on review and affirm the Commission's decision based solely upon a facial analysis of the affidavits.

---

[1]We offer no opinion on respondents' cross-appeal.  "As a general rule, courts in Illinois do not *** render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided." *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009).

¶ 27    Although the majority finds the affidavits at issue to be facially invalid (*supra* ¶ 15), it proceeds to consider the witnesses' testimony because it concludes that "substantial compliance [with the requirements of section 7-10] can *** be established through" such testimony (*supra* ¶ 17). I disagree. Section 7-10 prescribes the required contents of nominating petitions and the accompanying affidavits. To determine whether a party has substantially complied with those requirements, we should look only to the content of the written documents themselves. I fear that the analysis employed by the majority will muddy the waters and invite further litigation in this very important area of the law where clarity is needed.