# Illinois Official Reports

## Appellate Court

<div style="border:1px solid">

### *Washington v. Chicago Board of Election Commissioners*, 2019 IL App (1st) 190260

</div>

| | |
|---|---|
| Appellate Court Caption | BRUCE WASHINGTON, Petitioner-Appellant, v. THE CHICAGO BOARD OF ELECTION COMMISSIONERS; MARISEL A. HERNANDEZ, in Her Official Capacity as Chair of the Chicago Board of Election Commissioners; WILLIAM J. KRESSE and JONATHAN T. SWAIN, in Their Official Capacities as Commissioners of the Chicago Board of Election Commissioners; and ZERLINA SMITH, Respondents-Appellees. |
| District & No. | First District, First Division<br>Docket No. 1-19-0260 |
| Filed | February 21, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 19-COEL-17; the Hon. Patrick T. Stanton, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Pericles Abbasi, of Chicago, for appellant.<br><br>Andrew Finko, of Chicago, for appellee Zerlina Smith.<br><br>Lasker Law LLC, of Chicago (Adam W. Lasker, of counsel), for other appellees. |

JUSTICE PIERCE delivered the judgment of the court, with opinion. Presiding Justice Mikva and Justice Walker concurred in the judgment and opinion.

## OPINION

¶ 1    Section 10-4 of the Illinois Election Code (Election Code) provides, in relevant part,

"No signature shall be valid or be counted in considering the validity or sufficiency of [a petition for nomination] unless the requirements of this Section are complied with. *** [The petition for nomination], before being presented to the electoral board or filed with the proper officer of the electoral district or division of the state or municipality, as the case may be, shall be neatly fastened together in book form, by placing the sheets in a pile and fastening them together at one edge in a secure and suitable manner, and the sheets shall then be numbered consecutively." 10 ILCS 5/10-4 (West 2016).

¶ 2    The provisions of section 10-4 of the Election Code are mandatory, and strict compliance is required. *Bendell v. Education Officers Electoral Board for School District 148*, 338 Ill. App. 3d 458, 462-63 (2003). Section 10-4 of the Election Code, however, does not define the terms "neatly fastened," "book form," or "secure and suitable manner." Instead, whether a candidate has strictly complied with section 10-4 is a fact-specific matter. See *id.* at 464. We held in *Bendell* that nomination papers were securely bound and in strict compliance with section 10-4 where the pages of the petition could not be separated without removing the binding—in that case, a paper clip—and the binding "did not interfere with preserving the integrity of the petitions and election process generally." *Id.*

¶ 3    The Chicago Board of Election Commissioners (Board) is considered an administrative agency. *Mitchell v. Cook County Officers Electoral Board*, 399 Ill. App. 3d 18, 22 (2010). On appeals from the circuit court's decision in administrative review cases, we review the decision of the Board, not the circuit court. *Id.* The Board's findings and conclusions on questions of fact are *prima facie* true and correct and will be overturned if those conclusions are against the manifest weight of the evidence. *Cunningham v. Schaeflein*, 2012 IL App (1st) 120529, ¶ 19. Here, the parties agree that this case presents a mixed question of law and fact, and petitioner, Bruce Washington, does not challenge any of the Board's factual findings. Where the facts are admitted or established, the controlling rule of law is undisputed, and the issue is whether the facts satisfy statutory standards, the case presents a mixed question of law and fact, which we review under the clearly erroneous standard. *Id.* "A decision is clearly erroneous where the entire record leaves the reviewing court with the definite and firm conviction that a mistake has been made." *Crossman v. Board of Election Commissioners*, 2012 IL App (1st) 120291, ¶ 9.

¶ 4    In this appeal, Zerlina Smith filed nomination papers to appear on the ballot for alderman of the Twenty-Ninth Ward in Chicago in the General Municipal Election to be held on February 26, 2019. Washington objected to Smith's nomination papers, asserting, in relevant part, that Smith's nomination petition was invalid because her nomination papers were not "securely bound" at the time of filing, as required by section 10-4 of the Election Code (10 ILCS 5/10-4 (West 2016)). After a hearing where Washington was allowed discovery, the

Board produced requested documents, and Washington did not produce any witnesses on the issue of whether the nomination papers were securely bound at the time of filing, the hearing officer recommended that the Board overrule Washington's objections. The Board thereafter held a hearing where Washington's counsel argued his position but presented no witnesses. The Board—with one commissioner dissenting—adopted the hearing officer's recommendation, overruled Washington's objection, and ordered that Smith's name be printed on the ballot. Washington filed a petition for judicial review of the Board's decision in the circuit court of Cook County. The circuit court affirmed, finding that the Board's decision was not clearly erroneous. Washington appeals. We granted Washington's motion to expedite this appeal, and for the reasons that follow, we affirm.

¶ 5                                         I. BACKGROUND

¶ 6        Smith filed 130 pages of nomination papers on November 26, 2018, which included a statement of economic interests, a loyalty oath, a statement of candidacy, and 126 consecutively numbered signature sheets. On December 3, 2018, Washington filed an objector's petition challenging Smith's nomination papers for a number of reasons, including a violation of section 10-4 of the Election Code (*id.*). A records examination found—and Washington concedes—that Smith had more than the statutory minimum of signatures required to appear on the ballot. The only issue on appeal is Washington's assertion that Smith's nomination papers were invalid because the papers were not fastened in a "secure and suitable manner." Washington alleged that Smith's nomination papers were "punched with a 2-hole punch and an Acco-style 2 3/4 [inch] prong base was fed through the holes but it was not sealed with a prong fastener compressor." Washington further alleged that "undamaged pages could be removed from the set of petitions without removing the prong." In advance of a hearing, Washington requested that the Board produce photographs of Smith's nomination papers taken by the Board at the time the papers were filed. Washington did not issue any subpoenas for witnesses or request that any Board employee testify about the condition of the nomination papers at the time the nomination papers were filed.

¶ 7        On January 21, 2019, a hearing officer heard argument from the parties on Washington's objections. The transcript of the proceedings before the hearing officer reflects that the photographs produced by the Board were admitted into evidence without objection. No witnesses were called. Counsel for Washington offered to demonstrate—using the original nomination papers—how individual sheets could be removed from the stack of papers without removing the binding or damaging the sheets. Counsel for Smith objected, asserting in part that "the pages right now are not in the same condition that they were in when they were filed, that the fastener that was used is not the same fastener."[1] Before the hearing officer made any decision, counsel for Washington offered to provide a demonstration using a different set of papers. The hearing officer stated,

> "Insofar as there's no way to say for sure that this stack is exactly, in every respect, the same as the stack as it was when it was filed, nor—we already know your

---

[1] The record reflects that there is no dispute that after the Board receives a candidate's nomination papers, the secure fastener is removed in order to permit the Board to, among other things, electronically scan the nomination papers.

clip isn't the same clip that was used then. That, I think, outweighs the probative value, which I don't feel I need.

* * *

I'm not confused. I get it. I understand what you're saying."

¶ 8 Following the hearing, the hearing officer took the matter under advisement. On January 23, 2019, the hearing officer entered a written recommended decision. The hearing officer found that the photographs

"showed that the pages were bound together by a 2 3/4 inch, 2-hole prong metal fastener spindled along the top edge of the stack of the Nomination Papers. The ends of the prongs extended @1/4 [*sic*] inch in length above the top page did not have the brace that can be used to connect the prongs. The ends were however, bent outward to secure the pages together."

¶ 9 The hearing officer further found that one of the photographs "showed the staff handling the Nomination Papers [at the time of filing] and bending sections of them back to access pages in the middle of the book without the top pages appearing to be unsecure." The hearing officer considered *Bendell*, in which this court found that nomination papers consisting of six to eight pages held together by a paper clip "were securely fastened because a member of the Board was unable to pull them apart without removing the paper clip." *Bendell*, 338 Ill. App. 3d at 464. The hearing officer also found

"So, the question is not really whether or not the pages can be removed without being torn but whether the Nomination Papers can be separated from the book without removing or manipulating the fastener. In this case, it may be true that the use of the brace to connect the prongs would have made it more secure by requiring additional steps to manipulate the fastener to allow removal of undamaged sheets from the book. Nevertheless, the use of the prongs alone (without the brace) appeared to create a book in a sufficiently secure manner once the prongs were bent down in either an outward or an inward direction insofar as the pages could not be removed unless the prongs were straightened out to loosen their grip on the pages, and meets the *Bendell* test."

The hearing officer recommended that Washington's objection be overruled and that Smith's name appear on the ballot.

¶ 10 Washington filed a Rule 20 motion seeking to present additional argument and evidence before the Board. The Board held a hearing on January 25, 2019. Counsel for Washington again sought to personally demonstrate to the Board, using the original nomination papers, that pages could easily be removed. Counsel for Smith again objected on the basis that the nomination papers had been handled "quite a bit" and that there was "no clip on them at present." Counsel for Washington then offered to do a personal demonstration using a different set of 130 pages with a binding, stating:

"This is 130 sheets. Basically I was trying to get to a point where there is a little bit on top. The prongs are on top. Match how they were. Something match how [*sic*] they were once you file. And, you know, what I would show is that you can slide it off and slide it off and I would ask to do that with those."

¶ 11 One commissioner then noted that counsel "was able to remove sheets from this pile which are held together with a two prong device without touching or manipulating the

- 4 -

device, just by simply removing the sheets themselves." The Board also reviewed the photographs that were admitted into evidence by the hearing officer. After hearing argument from the parties, the Board—by a vote of 2 to 1—denied Washington's Rule 20 motion, adopted the hearing officer's report and recommendation, and issued a written order, finding:

> "The Objector's attorney attempted to demonstrate to the Electoral Board that petition sheets could be removed from the package of Nomination Papers that were bound by a two-hole metal-prong fastener for which evidence showed the top locking mechanism was not installed at the time of filing. However, the Electoral Board found that the Objector's attorney had to manipulate the metal prongs in order to remove a petition sheet, and the Nomination Papers therefore were 'securely bound' as under the test set forth in [*Bendell*]."

¶ 12    Washington filed a petition for review in the circuit court. After briefing, the circuit court affirmed, finding that the Board's decision was not clearly erroneous. Washington then filed a timely notice of appeal.

¶ 13                                              II. ANALYSIS

¶ 14    Washington argues that the Board's decision is clearly erroneous because he demonstrated that pages from Smith's nomination papers could be removed without manipulating the fastener filed with her nomination papers. He relies primarily on *Bendell*, along with a number of nonbinding, nonprecedential decisions of various other electoral boards to support his argument. He argues that the record does not support the Board's conclusion that he had to manipulate the metal prongs in order to remove pages during his demonstration. Although he acknowledges that the photographs admitted into evidence were relevant, he argues that "the fact that the sheets were not totally loose or did not fall apart when handled by the [Board] is irrelevant." He argues that the purpose of section 10-4 of the Election Code is to prevent tampering and that "the petition sheets in the state they were filed could be tampered without [*sic*] showing any signs of tampering or manipulating the fastener in any way." We affirm.

¶ 15    The burden of proof in contesting nomination papers lies with the objector. *Hagen v. Stone*, 277 Ill. App. 3d 388, 390 (1995). Washington did not meet his burden of demonstrating that Smith's nomination papers were not securely bound at the time of filing. First, Washington did not call any witnesses or present any admissible evidence to address the condition or state of the nomination papers at the time of filing with the Board. The only evidence that Washington offered was four photographs of the nomination papers taken by Board staff at the time the candidate filed her nomination papers. The hearing officer found, and our review of the photographs confirm, that Smith's nomination papers were held together in book form with a 2-hole prong metal fastener spindled along the top edge of the stack. One photograph shows a Board employee picking up the nomination papers, causing a number of pages in the stack to bend along the binding in order to access pages in the middle of the stack, and the nomination papers remaining bound together. Again, the Board adopted the hearing officer's findings, and Washington does not raise any argument that the Board's findings were against the manifest weight of the evidence. Washington, by relying solely on the arguments of counsel, did not introduce any evidence before the hearing officer or the Board to show that at the time of filing, Smith's nomination papers were anything other than securely fastened. The Board could reasonably conclude from the photographs taken by the

Board at the time of filing that Smith's nomination papers were neatly fastened in book form in a secure and suitable manner at the time of filing, as required by section 10-4 of the Election Code.

¶ 16　　Second, Washington failed to establish any foundation for his demonstration before either the hearing officer or the Board. "Demonstrative evidence has no probative value in itself." *Cisarik v. Palos Community Hospital*, 144 Ill. 2d 339, 341 (1991). Instead, it serves as a visual aid to the finder of fact in comprehending the verbal testimony of a witness. *Id.* at 341-42. Demonstrative evidence is admissible if (1) a proper foundation is laid, by someone with personal knowledge of the thing to be demonstrated, that the demonstration is an accurate portrayal of what it purports to show, and (2) the probative value is not substantially outweighed by the danger of unfair prejudice. *Id.* at 342. Here, Washington's counsel did not even attempt to establish that he had personal knowledge of Smith's nomination papers at the time of filing; it was undisputed that he was not present when Smith filed her nomination papers. Nor did he establish that his proposed demonstration was a fair and accurate portrayal of Smith's nomination papers at the time of filing. The hearing officer stated that she would be "fine with a demonstration of something that is either exactly like what was filed or closer to what was filed than what I see as your hypothetical stack." But at no point—either before the hearing officer or the Board—did Washington's counsel lay a foundation for his proposed demonstrative evidence. There was nothing to show that (1) Washington's counsel was a competent witness capable of offering relevant demonstrative evidence, (2) the indicated demonstrative pages were in the same or substantially similar condition to Smith's nomination papers at the time of filing, (3) the demonstrative fastener was the same or substantially similar to the one used on Smith's nomination papers, or (4) the demonstrative fastener was bent in the same or substantially similar manner as the one used on Smith's nomination papers. Therefore, the Board was under no obligation to find that Washington's demonstration had any probative value on the issue of whether Smith's nomination papers were securely fastened at the time of filing.

¶ 17　　Third, "[d]eterminations as to the weight of the evidence *** are uniquely within the province of the Board, and this court will not substitute its judgment for that of the Board on such matters." *Crossman*, 2012 IL App (1st) 120291, ¶ 14. The transcripts of the proceedings before the hearing officer and the Board demonstrate a careful consideration of the evidence and the arguments of counsel. We find that there was more than sufficient evidence in the record from which the Board could conclude that, at the time of filing, Board staff handled Smith's nomination papers and that the pages were secured in such a manner that the stack did not come apart. Even if the Board considered Washington's demonstration, it was within the province of the Board to assign whatever weight, if any, it deemed appropriate to that evidence. We will not reweigh the evidence.

¶ 18　　The Board overruled Washington's objection that Smith's nomination papers were not securely fastened at the time of filing. We are not left with a definite and firm conviction that a mistake has been made. We affirm.

¶ 19　　　　　　　　　　　　　　　III. CONCLUSION

¶ 20　　For the foregoing reasons, we affirm the judgment of the circuit court that affirmed the Board's decision. Zerlina Smith's name shall appear on the ballot for alderman of the Twenty-Ninth Ward in Chicago in the General Municipal Election to be held on February 26,

2019.

¶ 21          Affirmed.