2021 IL App (1st) 210221-U

SIXTH DIVISION
MARCH 11, 2021

No. 1-21-0221

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| DENNIS MAHONEY and COLLEEN SULLIVAN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| MUNICIPAL OFFICERS ELECTORAL BOARD OF | ) | |
| THE VILLAGE OF TINLEY PARK and its members, | ) | No. 21 COEL 18 |
| CYNTHIA BERG, Chairwoman, KRISTIN THIRION, | ) | |
| Member, ELLEN RAYMOND, Member; KRISTIN | ) | |
| THIRION, in her official capacity as Village Clerk; | ) | |
| KAREN YARBROUGH, in her official capacity as Cook | ) | |
| County Clerk; LAUREN STALEY FERRY, in her official | ) | |
| capacity as Will County Clerk; and KEVIN SUGGS, | ) | |
| candidate, | ) | Honorable |
| | ) | James R. Carroll, |
| Defendants-Appellees. | ) | Judge presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice Mikva and Justice Oden Johnson concurred in the judgment.

**ORDER**

¶ 1    *Held:* Candidate substantially complied with Election Code provision requiring addresses of all nominating petition signers, including county, when some signers did not provide their county with their address. Election board did not err in denying objections to candidate's petitions, except where the circuit court correctly found one portion of the board's decision to be against the manifest weight of the evidence.

¶ 2     Plaintiffs Dennis Mahoney and Colleen Sullivan appeal from an order of the circuit court substantially affirming the decision of defendant Municipal Officers Electoral Board (Board) of the Village of Tinley Park (Village) denying plaintiffs' objections to the election nominating petition of defendant Kevin Suggs for the office of Village president in the election commencing this month and concluding on April 6, 2021. Plaintiffs contend that (1) Suggs's nomination petitions violated section 10-4 (10 ILCS 5/10-4 (West 2018)) of the Illinois Election Code (Code) (10 ILCS 5/1-1 *et seq.* (West 2018)) because 240 signers failed to indicate their county of residence, (2) sheet 5 of said petitions should be stricken because its signatures were collected by two circulators but only one signed the statement required by section 10-4, (3) sheets 25 and 35 should be stricken because the circulator of those sheets failed to appear before the notary indicated, (4) a circulator engaged in fraud, and the Board did not appropriately weigh the evidence of fraudulent conduct, and (5) sheet 2 should be stricken because the circulator's signature on that sheet did not match the others he circulated. For the reasons stated below, we affirm the Board's decision as modified by the circuit court.

¶ 3                                  I. JURISDICTION

¶ 4     Suggs filed his statement of candidacy for president of the Village on December 21, 2020, and plaintiffs filed objections to Suggs's nominating petitions on December 30, 2020. The Board denied the objections on February 1, 2021, and plaintiffs filed a petition for judicial review in the circuit court on Monday, February 8, 2021. 10 ILCS 5/10-10.1(a) (West 2018) (petition for judicial review of electoral board decision to be filed within 5 days of service of the decision); 5 ILCS 70/1.11 (West 2018) (when a filing deadline falls on a weekend or holiday, the weekend or holiday is excluded from the deadline calculation). The circuit court affirmed the Board's decision in substance on February 25, 2021, and plaintiffs filed their notice of appeal on March 2, 2021. Accordingly, this court has jurisdiction over this matter pursuant to article VI, section 6 of the

Illinois Constitution and Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303 (eff. July 1, 2017) governing appeals in civil cases. This appeal has been expedited pursuant to Illinois Supreme Court Rule 311(b) (eff. July 1, 2018).

¶ 5                                    II. BACKGROUND

¶ 6      Suggs filed his statement of candidacy for president of the Village, with attached nominating petitions, on December 21, 2020. Each of the 43 sheets of the petitions, containing a total of 535 signatures, recited near the top of the page, above the signature and address lines, "We, the undersigned, qualified voters residing in the Village of Tinley Park, in the Counties of Cook and Will and the State of Illinois, do hereby petition" that Suggs be a candidate for Village president.

¶ 7      On December 30, 2020, plaintiffs filed their objections to Suggs's nominating petitions, alleging that they were registered legal voters in the Village "which is in the Counties of Cook and Will, State of Illinois." They alleged that at least 364 signatures of registered legal voters in the Village were required but there would not be sufficient valid signatures after various signatures and sheets of the petitions were found invalid.

¶ 8      Plaintiffs alleged that in various instances signers were not registered voters at their given addresses or were not Village residents, signatures were not genuine when compared to examples, persons signed Suggs's petitions more than once or also signed another candidate's petition, and signers did not appear before the circulator of their sheet. Plaintiffs sought to invalidate sheets of the petitions on various grounds: that sheet 43 was notarized by a person whose notary commission had expired, circulators of various sheets were a minor, not a citizen, or otherwise disqualified as a circulator, circulators provided incomplete addresses or did not sign their sheets, some sheets were circulated by a person other than who signed them as circulator, some circulators did not personally appear before a notary for notarization, and some sheets were altered after notarization.

Plaintiffs alleged that various signers "failed to provide a complete address by failing to fully state the name of the political subdivision or municipality in which the signer resides," failed to state the county in which they resided, or misstated the county. Lastly, plaintiffs claimed that every sheet circulated by Suggs, David Melnikov, Jack LaMorte, Jeremy Pappas and Lisa Lawrence should be invalidated because they engaged in a pattern of fraud and disregard for the Code.

¶ 9    Attached to plaintiffs' objections was an exhibit listing for each signature on Suggs's petitions any particular objections made thereto.

¶ 10                                A. Board Proceedings

¶ 11    Suggs filed a motion to strike from the objection the claim that the commission of the notary who notarized sheet 43 had expired and thus sheet 43 should be stricken. The Board found that, as a matter of law, the *de facto* officer doctrine applied so that the circulator could reasonably rely on a person holding himself out to be a notary to validate his circulator's statement.

¶ 12    Over Suggs's objection, the Board admitted into evidence 17 affidavits by 15 affiants offered by plaintiffs in support of their allegations of petition circulation irregularities.

¶ 13    The Board ordered defendant Clerk of Cook County and an independent examiner to examine the voter registration records of Cook and Will Counties respectively regarding the objections to particular signatures, and this was done by January 15, 2021. The Board adopted the results of these examinations: 328 signatures were reviewed with 136 objections sustained in Cook County, and six signatures were reviewed with four objections sustained in Will County.

¶ 14    Plaintiffs filed a motion with the Board to overturn the decisions of the examinations. For the Cook County signatures, the Board compared the petition signatures to exemplars from the voter registration records, and a majority of the Board found the signatures at issue to be similar to the exemplars. For the Will County signatures, no exemplars were provided. The Board concluded that plaintiffs failed to satisfy the burden to overturn the presumptively validity of the

Cook County examinations except as to four signatures, and in the absence of evidence did not overturn the Will County examinations. The Board thus found 391 valid signatures after this examination process, well in excess of the required 364 signatures.

¶ 15    At plaintiffs' behest, the Board subpoenaed Suggs, Melnikov, LaMorte, Pappas, Lawrence, and Denise Smith.

¶ 16                                    B. Board Hearing

¶ 17    The Board held a hearing at which Suggs, LaMorte, and Smith appeared. Melnikov, Pappas, and Lawrence had not been served with their subpoenas, and plaintiffs agreed that the hearing could proceed without them. Affiant Amanda Litko, a registered voter in the Village, testified that Melnikov asked her to sign a petition for Brian Younker, which she declined. Suggs objected to her testimony as irrelevant, and plaintiffs argued that her testimony was relevant to show Melnikov's misconduct as a circulator. A majority of the Board found that any misconduct by Melnikov regarding Younker's petition was irrelevant to Suggs's petitions, noting that Litko and other affiants admitted signing Suggs's petitions. Plaintiffs noted that one affiant averred that she gave Melnikov a signature for Younker's petition but it ended up on Suggs's petition as well.

¶ 18    Smith testified that she circulated sheet 5 of Suggs's petition and obtained nine voter signatures including her own, but she did not sign the circulator's statement before leaving the sheet for Suggs to pick up.

¶ 19    Jack LaMorte testified that he was paid to circulate petitions for Suggs and Younker and had never circulated a petition before. He circulated two sheets for Suggs and witnessed each signature he gathered; that is, he testified that he gathered each signature thereon from the signer and expressly denied signing any name but his own. LaMorte read the circulator's statement on each sheet once it was full and signed it on both sheets. He returned the sheets to Daniel Brinkman, who paid him. LaMorte knew Brinkman and believed him to be a notary, but he did not orally

swear an oath in Brinkman's presence. He believed he was swearing to the circulator's statement. He never met Harold Ramey, who notarized his sheets.

¶ 20    Suggs testified that he had three friends circulate his nominating petition and also employed two services. Smith, one of his friends, circulated one sheet but he did not recall her signing the circulator's statement. Once she returned the sheet to him, he placed it in a pile with other petition sheets without checking if she signed it or had her signature notarized. He did not recall taking that sheet from the pile and recirculating it himself. He would have recirculated a sheet that was not full only if he had circulated it the first time. He did not receive any other incomplete sheets from another circulator. The paid circulators obtained their notarizations, while Suggs brought the sheets circulated by friends to a bank to be notarized. He did not know notary Ramey, who was not the bank notary. Suggs expressly denied signing any name but his own on the sheets he circulated.

¶ 21    The issue arose of whether to strike sheet 2 because Melnikov's purported signature was not his in light of its differences from other sheets he circulated. Plaintiffs noted the Melnikov signatures on various sheets of the petition and argued that the signature on sheet 2 was significantly different. The Board considered the various Melnikov sheets, noting that his printed writing was consistent even if his signature was not, and rejected the challenge to sheet 2.

¶ 22                                    C. Board Decision

¶ 23    The Board issued its decision denying plaintiffs' objections on February 1, 2021. Regarding the failure of some signers to provide their county of residence with their address, the Board found that section 10-4 is mandatory but substantial compliance is sufficient, and Suggs's petitions substantially complied. The Board noted that the signers otherwise provided their residential addresses and that plaintiffs and the record examiners were able to find and examine the signer's addresses so that the violation of section 10-4 was "technical or minor in application."

¶ 24    Regarding alleged "improprieties such as false swearing, improper notarization, and forgery" by Suggs, Melnikov, LaMorte, Pappas, and Lawrence, the Board expressly found the testimony of LaMorte and Suggs to be credible and attributed irregularities to mistake rather than fraud. LaMorte testified that he believed his friend Brinkman to be a notary and therefore believed that he had signed the circulator's statement or certification in front of a notary, and also testified to being unaware that Harold Ramey actually notarized the petition page. While Smith testified that she obtained the first nine signatures on sheet 5, Suggs testified that he placed that sheet in a pile of several sheets that he collected and thus may have inadvertently signed sheet 5 as circulator. The other circulators alleged to have committed fraud did not testify as they had not been served with subpoenas when the hearing was held.

¶ 25    Regarding Melnikov, plaintiffs presented four affidavits by persons who claimed to have signed petitions circulated by Melnikov for Suggs and Younker whereby they signed one petition but their signature appeared on the other as well. Three affiants averred to signing only Suggs's petitions and one averred to signing only Younker's petition. Plaintiffs also called an affiant to testify. Suggs objected to the testimony and affidavits as irrelevant because Younker was not a party to the Board proceedings. The Board sustained the objection and did not allow further evidence on the issue because the objections before it concerned Suggs rather than Younker.

¶ 26    The Board concluded that plaintiffs failed to show by clear and convincing evidence that there was a pattern of fraud or false swearing in the circulation of Suggs's petitions. The Board found that Suggs had 391 valid signatures while 364 were required so that his candidacy was valid.

¶ 27    Board member Kristin Thirion dissented. She found that strict compliance with section 10-4 regarding county of residence is required and would have stricken 140 affected signatures not checked in the registration examinations. She also found a pattern of fraud by Suggs, Melnikov,

LaMorte, Pappas and Lawrence and would have invalidated all sheets they circulated. She would have sustained plaintiffs' objection seeking to strike sheet 2.

¶ 28                                    D. Circuit Court Review

¶ 29    Plaintiffs filed a complaint for administrative review in the circuit court on February 8, 2021. They claimed that the Board's decision was contrary to law and misinterpreted the Code, and was arbitrary, capricious, and against the manifest weight of the evidence. Plaintiffs disputed all errors in the Board's decision, particularly its (1) interpretation of section 10-4's requirement of a petition signer's county of residence, (2) denial of plaintiffs' challenge to the voter registration examinations, and (3) determination that circulators Suggs, Melnikov, LaMorte, Pappas and Lawrence did not engage in a pattern of fraud that would invalidate the sheets they circulated. Plaintiffs asked the court to reverse the Board's decision, find Suggs's nomination papers invalid, and order his removal from the ballot.

¶ 30    The Board appeared in the circuit court and filed the Board record.

¶ 31    After receiving the parties' briefing and hearing oral argument, the circuit court issued its judgment on February 25, 2021. The court affirmed the Board's decision except to reverse regarding sheet 5 of Suggs's petition insofar as the court invalidated the first nine signatures on that sheet. The court concluded that Suggs's petitions had 382 valid signatures, in excess of the required 364 signatures, and ordered that Suggs's name appear as a candidate for Village president on the ballot for the April 6, 2021, election.

¶ 32    The court explained that it considered the signers' county of residence issue a question of law and reviewed it *de novo*. The court found section 10-4 to be mandatory but substantial compliance would be sufficient. It also found the purpose of the signers' residential address requirement in section 10-4 "is to provide necessary information to citizens-objectors to be able to challenge the registration of petition signers and to potentially bring the signer before the electoral

board, if necessary, to determine the validity of the nomination petitions at issue." In that light, the court found the absence of some signers' residential counties to be a minor deviation because the county is a small part of the information needed by candidates, objectors, clerks, and boards.

¶ 33    Regarding sheet 5, the court noted the Board's finding that plaintiffs failed to show a pattern of fraud and the circulation statement by Suggs was inadvertent. The court found the Board's findings were not clearly erroneous but also found that it had a firm conviction that not striking the signatures on sheet 5 gathered by Smith was erroneous.

¶ 34    Regarding LaMorte, the court found that the purpose of requiring the notarization of a circulator's statement is to make the circulator subject to the penalty of perjury. LaMorte testified that he read and signed the circulator's statements on sheets 25 and 35 and submitted the sheets to Brinkman believing him to be a notary. However, Brinkman was no longer a notary and Ramey notarized sheets 25 and 35. The court applied the *de facto* officer doctrine, noting that circulators would otherwise be obliged to investigate notaries.

¶ 35    Lastly, as to the allegations of a pattern of fraud and disregard for the Code, the court found that it would apply the clearly erroneous standard to the Board's finding that the affidavits contained insufficient information to find such a pattern. Noting that it already ruled on the claims regarding Suggs and LaMorte, the court found that there was not clear and convincing evidence to reverse the Board regarding Melnikov. As to Melnikov's signature on sheet 2, the court found that his signature on that sheet looked different "from a layman's eye" than his other signatures but that did not rise to the level of clear and convincing evidence. This appeal timely followed.

### III. ANALYSIS

¶ 36    On appeal, plaintiffs contend that (1) Suggs's petitions violated section 10-4 of the Code because 240 signers failed to indicate their county of residence, (2) sheet 5 of said petitions should be stricken because Suggs and Smith circulated those pages but only Suggs signed the required

circulator's statement, (3) sheets 25 and 35 should be stricken because circulator LaMorte failed to appear before Ramey, the notary indicated on the sheets, (4) Melnikov engaged in fraud and the Board did not appropriately weigh the evidence of fraudulent conduct, and (5) sheet 2 should be stricken because Melnikov's signature there did not match the others he circulated.

¶ 37    Plaintiffs' memorandum before this court[1] includes a heading asserting that all sheets notarized by Ramey should be stricken, as issue 4 of the Issues Presented. However, the memorandum then raises no argument on that point. On pages 18 to 21, plaintiffs argue their issue 3, whether sheets 25 and 35 should be stricken due to LaMorte's acts or omissions. However, on pages 21 to 23, plaintiffs proceed to address their issues 5 and 6 regarding Melnikov without ever raising argument on whether all sheets notarized by Ramey should be stricken. The issue of Ramey's notarizations has not been properly raised by plaintiffs as appellants, and we shall not consider it. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1. 2020)("Points not argued are forfeited").

¶ 38    "Certificates of nomination and nomination papers, *** being filed as required by this Code, and being in apparent conformity with the provisions of this Act, shall be deemed to be valid unless objection thereto is duly made in writing within 5 business days after the last day for filing the certificate of nomination or nomination papers." 10 ILCS 5/10-8 (West 2018). Objections can be made by "[a]ny legal voter of the political subdivision or district in which the candidate *** is to be voted on," by filing "an objector's petition together with 2 copies thereof *** in the office of the election authority or local election official with whom the certificate of nomination, nomination papers or petitions are on file. Objection petitions that do not include 2 copies thereof, shall not be accepted." *Id*. The burden of proof in contesting nomination papers is on the objector. *Washington v. Chicago Bd. of Election Commissioners*, 2019 IL App (1st) 190260, ¶ 15.

---

[1] Due to the expedited appeal here as this case concerns an approaching election, we ordered the parties to file simultaneous memoranda rather than briefs.

¶ 39    Objections to nominations of candidates for municipal offices are heard and decided by a municipal officers electoral board (10 ILCS 5/10-9(3) (West 2018)) that has "the power to administer oaths and to subpoena and examine witnesses," shall rule upon the objection by majority vote, and "must state its findings in writing and must state in writing which objections, if any, it has sustained." 10 ILCS 5/10-10 (West 2018). The decision of an electoral board regarding objections to a nominating petition is subject to judicial review, first by the circuit court. 10 ILCS 5/10-10, 10-10.1(a) (West 2018). We review the board's decision, not the circuit court decision. *Jackson-Hicks v. East St. Louis Bd. of Election Commissioners*, 2015 IL 118929, ¶ 19; *Washington*, 2019 IL App (1st) 190260, ¶ 3. The board's findings and conclusions are *prima facie* true and correct, and a reviewing court will not substitute its judgment for that of the board on determinations of the weight of evidence. *Washington*, 2019 IL App (1st) 190260, ¶¶ 3, 17.

¶ 40    We review an electoral board's decision based on what kind of question it considered. Questions of fact are reversed if against the manifest weight of the evidence. *Id.* ¶ 3. A mixed question of law and fact is reversed if the decision was clearly erroneous; that is, we have a definite and firm conviction that a mistake was made. *Id.* A mixed question of law and fact concerns the legal effect of a given set of facts when the historical facts are admitted or established, the legal rule is undisputed, and the issue is whether the facts satisfy the applicable rule. *Id.* A legal question is reviewed *de novo*, as is an issue where the historical facts are established but there is a question as to whether an administrative body correctly interpreted governing legal provisions. *Jackson-Hicks*, 2015 IL 118929, ¶ 20; *Cunningham v. Schaeflein*, 2012 IL App (1st) 120529, ¶ 19.

¶ 41                    A. Signers' Counties

¶ 42    Plaintiffs first contend that Suggs's nomination petitions violated section 10-4 of the Code because 240 signers failed to indicate their county of residence.

¶ 43    We consider this an issue where the historical facts are established – various signers of Suggs's petitions did not provide their county of residence – and the parties dispute whether the Board correctly interpreted or applied the governing provisions of section 10-4. Thus, applying the standards of review discussed above, we shall review this contention *de novo*.

¶ 44    Section 10-4 of the Code (10 ILCS 5/10-4 (West 2018)) governs the form of nominating petitions. Regarding the information provided by signatory voters, it provides that a petition:

> "shall be signed by the qualified voters in their own proper persons only, and opposite the signature of each signer his residence address shall be written or printed. The residence address required to be written or printed opposite each qualified primary elector's name shall include the street address or rural route number of the signer, as the case may be, as well as the signer's county, and city, village or town, and state. However, the county or city, village or town, and state of residence of such electors may be printed on the petition forms where all of the electors signing the petition reside in the same county or city, village or town, and state. Standard abbreviations may be used in writing the residence address, including street number, if any. No signature shall be valid or be counted in considering the validity or sufficiency of such petition unless the requirements of this Section are complied with." 10 ILCS 5/10-4 (West 2018).

¶ 45    The provisions of the Code in general and section 10-4 in particular are mandatory. *Jackson-Hicks*, 2015 IL 118929, ¶ 23; *Washington*, 2019 IL App (1st) 190260, ¶ 2. This court has recited that strict compliance with the provisions of section 10-4 is thus required. *Washington*, 2019 IL App (1st) 190260, ¶ 2. However, this court has also held that the mandatory nature of a section of the Code does not necessarily require strict compliance because application of the Code involves balancing protecting the integrity of the electoral process and the substantial rights of potential candidates to have ballot access and of voters to nominate candidates of their choice.

*Cunningham*, 2012 IL App (1st) 120529, ¶¶ 23, 28; see also *Jackson-Hicks*, 2015 IL 118929, ¶¶ 32, 36. Our supreme court has distinguished between "a situation where the candidate met the basic requirements of the Election Code, but did so in a technically deficient manner," where substantial compliance may suffice, from one where "the candidate failed to meet a threshold requirement completely" such as the number of valid petition signatures required to be a candidate. *Jackson-Hicks*, 2015 IL 118929, ¶ 37.

¶ 46     In relevant part, *Cunningham* involved a petition circulator who transposed two digits of his address on each sheet of the petition he circulated, when the Code required that circulators provide their residential address. *Id.* ¶¶ 18, 21, 22. This court held that a circulator's complete failure to provide his or her address would render the petition sheets he or she circulated invalid but the circulator's address mistake did not. *Id.* ¶¶ 23-26. This court found that "listing the circulator's address is simply the method used by the Election Code to locate a circulator in the event he is needed to testify before an electoral board." *Id.* ¶ 28. "Under these circumstances, where [the circulator] mistakenly transposed two digits in his street address on his petition sheets, yet he was located and able to testify before the Board, the minor error in the circulator's address should not serve to invalidate all petitions circulated by him." *Id.* ¶ 26.

¶ 47     Here, we find substantial compliance with section 10-4 sufficient for a duty – providing a petition signer's residential address next to their signature – imposed at least partially on the signers of nominating petitions. Striking a signature from a petition solely because the signer did not include their county in their address would be excessive if and when it would not only thwart the rights of candidates and signatory voters but would *not* appreciably protect election integrity.

¶ 48     Considering Suggs's petitions through that lens, we agree with the Board that the petitions substantially complied with section 10-4 regarding the provision of signers' county of residence. Each sheet of the petitions recited that the signers were registered valid voters in the Village in the

counties of Cook or Will, as the Village is in both counties. Each signature line provided a space for signers to provide their county as part of their address; that is, the petition forms duly prompted signers to provide the information required by section 10-4. However, some signers did not heed that prompt, an understandable error and by itself no evidence of obfuscation on the part of those signers, as writing one's county as part of one's address is not routine or customary.

¶ 49    We find that the purposes of section 10-4's requirement for petition signers' addresses are to be able to find them, as with circulator's addresses in *Cunningham*, and to confirm their status as registered valid voters of the relevant electoral jurisdiction. The relevant jurisdiction here is the Village, which happens to be in both Cook and Will counties. Thus, a registered voter residing in the Village would have been a valid signer of Suggs's petition whether he or she lived in the Cook or Will county portion of the Village. While the task of confirming signers' voter registration would be made easier if every signer provided their county as part of their address, the task would not be rendered noticeably difficult, and certainly not impossible, without that piece of information so long as the signers otherwise provided their residential addresses. In sum, this was a situation where a basic requirement of the Code – the gathering of nominating petition signer's residential addresses – was met but in a technically deficient manner, rather than one where the candidate completely failed to meet a threshold requirement.

¶ 50                                    B. Sheet 5

¶ 51    Plaintiffs also contend that sheet 5 of Suggs's nomination petitions should be stricken because Suggs and Smith circulated those pages but only Suggs signed the circulator's statement.

¶ 52    Regarding the circulation of nominating petitions, section 10-4 provides:

    "At the bottom of each sheet of such petition shall be added a circulator's statement, signed

    by a person 18 years of age or older who is a citizen of the United States; stating the street

    address or rural route number, as the case may be, as well as the county, city, village or

town, and state; certifying that the signatures on that sheet of the petition were signed in his or her presence; certifying that the signatures are genuine; and either (1) indicating the dates on which that sheet was circulated, or (2) indicating the first and last dates on which the sheet was circulated, or (3) certifying that none of the signatures on the sheet were signed more than 90 days preceding the last day for the filing of the petition; and certifying that to the best of his knowledge and belief the persons so signing were at the time of signing the petition duly registered voters *** of the political subdivision or district for which the candidate or candidates shall be nominated, and certifying that their respective residences are correctly stated therein." 10 ILCS 5/10-4 (West 2018).

¶ 53    Here, the circuit court found that the Board's decision was against the manifest weight of the evidence insofar as Smith testified clearly that she gathered the first nine signatures on sheet 5 before returning it to Suggs without signing the circulator's statement. The court struck those nine signatures. In other words, the court found error where the hearing evidence clearly supported the opposite conclusion to the Board's decision on this particular point but did not find error in the Board not striking sheet 5 in its entirety. We agree. Suggs provided an explanation to the Board as to how he came to circulate a sheet of his nominating petition already circulated by Smith. The Board found that evidence credible, and we shall not reweigh that evidence.

¶ 54                              C. Sheets 25 and 35 and Notarization

¶ 55    Plaintiffs contend that sheets 25 and 35 of Suggs's nomination petitions should be stricken because circulator LaMorte failed to appear before Ramey, who notarized those sheets.

¶ 56    As a threshold matter, we consider this contention a mixed question of law and fact, as we are asked to consider the legal effect of the facts established in the Board proceedings, and we shall therefore reverse only if the Board's decision on this point was clearly erroneous.

¶ 57 Section 10-4 requires that each sheet of a nominating petition must bear the circulator's statement and "[s]uch statement shall be sworn to before some officer authorized to administer oaths in this State." 10 ILCS 5/10-4 (West 2018).

¶ 58 This court has held that a circulator's failure to personally appear before the notary who certified the circulator's statement invalidates the affected portions of the petition. *Cunningham*, 2012 IL App (1st) 120529, ¶ 35 (citing *Bowe v. Chicago Electoral Board*, 79 Ill. 2d 469, 470 (1980)). This court has also held it proper to strike all sheets circulated by a circulator who failed to appear before the certifying notary, not just the particular sheets for which the circulator did not so appear, "because their repeated failure to appear before the notary constituted a pattern of improper swearing and substantial disregard for the mandatory provision of the Election Code." *Id*. In other words, "where the sheets of a nominating petition submitted by a circulator evidence a pattern of fraud, false swearing, and total disregard for the requirements of the Election Code, the sheets circulated by that individual should be stricken in their entirety." *Id*. ¶ 39.

¶ 59 Here, LaMorte testified to the circumstances under which he submitted the two sheets he circulated: he read the circulator's statement or certification and signed it on each sheet, and he gave them to Brinkman, who he believed to be a notary. LaMorte (1) affirmed the circulator's statement or certification by signing it, (2) believed that he had personally appeared before a notary, and (3) believed he had sworn to the circulator's statements. It was reasonable on such evidence for the Board to conclude that LaMorte did not engage in a pattern of fraud, false swearing, or total disregard for the Code's requirements. In this regard we find this case distinguishable from *Cunningham*, where the circulators admittedly failed "to personally appear before a notary on a regular basis."

¶ 60                                    D. Melnikov, Misconduct, and Sheet 2

¶ 61    Plaintiffs also contend that circulator Melnikov engaged in fraud, and the Board did not appropriately weigh the evidence of fraudulent conduct. Lastly, plaintiffs contend that sheet 2 should be stricken because Melnikov's signature thereon did not match the others he circulated.

¶ 62    Whether evidence sought to be introduced in an administrative hearing is relevant a matter of discretion reversed only for abuse of discretion. *McDermott v. City of Chicago Police Bd.*, 2016 IL App (1st) 151979, ¶ 18.

¶ 63    Here, the Board struck evidence from Litko and similar affiants regarding Melnikov's circulation activities. We cannot find that the Board abused its discretion in excluding as irrelevant evidence from affiants who averred to signing Suggs's affidavits because their affidavits also addressed the nomination petitions of Younker whose candidacy was not before the Board. Lastly, as to Melnikov's signature on sheet 2, we cannot conclude that the Board's decision to not strike sheet 2 was clearly erroneous or against the manifest weight of the evidence.

¶ 64                                    IV. CONCLUSION

¶ 65    Accordingly, we affirm the decision of the Municipal Officers Electoral Board of the Village of Tinley Park except to affirm the judgment of the circuit court striking nine additional signatures from Suggs's petitions. As the number of valid signatures on Suggs's petitions still exceeds the required number, we affirm the Board's decision that Kevin Suggs's name shall appear on the ballot for the office of village president of the Village of Tinley Park to be voted on at the consolidated election of April 6, 2021.

¶ 66    Affirmed as modified.